[Civ. No. 8202.   Third Dist.   May 29, 1953.]

JOHN CORREA, Respondent, v. QUALITY MOTOR COMPANY et al., Defendants: PHILLIP S. SNYDER, Appellant.

248

D. R. Robinson for Appellant.

Daniel J. Higgins for Respondent.

JONES, J. pro tem.—At the time of the transaction out of which this case arose, the defendant Phillip S. Snyder was engaged in the motor sales business in the city of Alameda under the firm name and style of Quality Motor Company. This business consisted of an agency for Willys Overland products, and was acquired by Mr. Snyder in January of 1948. At that time it was operated under the name of Quvale Motor Company. One John W. Flint was then selling the products handled by the Quvale Company in Auburn, California. After the purchase of the business and on or about the 14th day of April, 1948, Snyder entered into a written agreement with Flint whereby the latter undertook to sell the products being handled by Snyder on a consignment basis. In this agreement it was provided among other things that, "When a sale is made, it is agreed that the transaction will be immediately reported to the Quality Motor Co. and all necessary papers and details, *including credit information,* will be provided promptly to Quality Motor Co. Until other arrangements have been made, it is agreed that all Department of Motor Vehicle Report of Sale forms shall be completed by Quality Motor Co. in Alameda and that John W. Flint will provide a Power of Attorney

form made out to P. S. Snyder and signed by the buyer.'' (Emphasis added.) Under this agreement vehicles were delivered by Snyder to Flint for sale by the latter.

On the 3d day of August, 1948, the respondent, John Correa, made a down payment of $1,000 to Flint at his place of business in Auburn on the purchase price of a Willys 1-ton pickup truck. The balance of the purchase price, with sales tax, license fee, and time price differential, amounted to $1,224.42. A sales contract was made by Flint in the name of the Quality Motor Company with Correa to pay this balance in 12 monthly installments of $102.44 each. On the same day, August 3d, the contract was assigned by the Quality Motor Company through Flint to the Placer County Bank at Auburn. On the 28th of August, Correa paid the bank the outstanding balance on the contract, clearing up all indebtedness against the truck.

After Correa had been in possession of the truck for about three weeks and after the balance on the contract had been paid he approached Flint to take it in on payment for a Willys jeep. Correa's testimony as to what occurred between Flint and himself is: ''So I drove this truck home, sold my little jeep, and had this truck, and finally decided that I would rather have had the small jeep or another small jeep than the truck. So I saw John shortly after I took the truck and told him about it; he says, 'Well, I'll tell you,' he says, 'These trucks are hard to get. We don't get them readily, and if you bring it back, *I will take it in* and, on the company, and resell it.' [Emphasis added.] He says, 'You haven't put on but about fifty miles on it,' which I drove it from here down to Lincoln from Auburn, to Lincoln, I think I went once from Lincoln down to Roseville and back to the house, and up here. He says, 'You bring the truck back and leave it here and I'll sell it.' He says, 'If you want a small jeep,' he says, 'I'll sell, and you can go ahead and when you get the money back,' he says, 'I will let you have a small one.' . . . I says, 'It is brand new, I haven't put on fifty miles on it.' He says, 'In fact the price has went up, I'll sell it as a new truck'. . . . Q. When you gave the car back to him to resell for you, did you get a receipt of any kind for the car? A. No, I didn't, no, I didn't. I just drove it up into his yard there and gave him the keys.''

On December 2, 1948, Flint sold the truck to one Followell for $2,180, receiving as a down payment a jeep valued at $1,495.23. against which there was an indebtedness of

$1,110.23, together with cash in the sum of $735, leaving an unpaid balance of $1,114.50, including sales tax of $54.50, and time price differential of $100.31. This balance was covered by a sales contract executed by the Quality Motor Company as seller by John Flint, and Followell as purchaser. This contract, payable in 18 monthly installments of $67.44, was also assigned to the Placer County Bank with recourse on December 2, 1948, by the Quality Motor Company through Flint.

Toward the end of December, 1948, Correa, not having been able to get delivery of a jeep as promised, demanded the return of his money. Flint paid him $600 in small amounts over a period of time. In the early part of 1949 Flint disappeared and was next heard from in the armed forces. Correa then filed this suit to recover $1,580, which he claims is the balance due him on the transaction. As defendants, he named the Quality Motor Company, a corporation, John Flint, First Doe, and other fictitious persons. Flint was never served with summons and has not appeared. The Quality Motor Company, a corporation, and P. S. Snyder, doing business under the firm name and style of Quality Motor Company appearing as First Doe, answered. Judgment went for the plaintiff against the Quality Motor Company, a corporation, and Snyder. After the appeal was taken the judgment was amended by a stipulation and order augmenting the record and omitting the Quality Motor Company, a corporation. As the judgment now stands, it is against Snyder alone.

Snyder has not only appealed from the judgment but also from the order denying his motion for a new trial. As an order denying a motion for a new trial is nonappealable, this portion of the appeal should be dismissed. (Code Civ. Proc., § 963; *Nichols* v. *Mitchell,* 32 Cal.2d 598, 600 [197 P.2d 550].)

The trial court found that in his dealings with Correa, Flint was acting as the agent of Snyder and within the scope of his authority. This finding is challenged by appellant as being without support in the evidence and appellant urges that for this reason the judgment should be reversed. He makes the argument that the proof conclusively shows that in taking the truck back and disposing of it to Followell, Flint acted not for him, but for Correa and at Correa's instance and suggestion. Particular stress is laid upon the agency contract, Snyder claiming that by this

agreement the authority of Flint was limited to the sales of vehicles for cash and not upon credit. He also vigorously contends that Flint's authority under the agency contract did not extend to the acceptance of "trade-ins" on the purchase price of new cars. ■ Under rules which are well established the extent of the authority of Flint in this respect, like the existence of his agency, is a question of fact. (1 Cal.Jur. p. 716.)

There is no dispute by Snyder that he contracted with Flint to sell Willys automobile products in the Auburn territory and that Flint undertook the engagement. He takes the position, however, that the agency contract did not empower Flint to sell on credit, or to accept "trade-ins" on the purchase price of the consigned vehicles. ■ As is said in *Hind* v. *Oriental Products Co., Inc.*, 195 Cal. 655, 667 [235 P. 438], "It is the general rule that when there is a known usage of the trade, persons carrying on that trade are deemed to have contracted in reference to the usage unless the contrary appears; *that the usage forms a part of the contract* . . . ." (Emphasis added.) This rule is also supported by the decision in *Isenberg* v. *California Emp. Stab. Com.*, 30 Cal.2d 34, 37 [180 P.2d 11], where it is held that an employment contract may be proven by usages and customs. ■ In *Covely* v. *C.A.B. Construction Co.*, 110 Cal.App.2d 30, 33 [242 P.2d 87], it is said: "Knowledge of the custom on the part of the contracting parties is presumed from the fact that they are in the business or trade in which the custom exists." ■ It is a matter of common knowledge that in the ordinary course of the automobile business the seller usually accepts used vehicles as part payment on the purchase price of new cars, and that the great bulk of the automobile business is done on sales contracts. These usages and customs of the trade become as much a part of the agency contract as if they were expressly set forth therein. (*Hind* v. *Oriental Products Co., Inc., supra.*) ■ Flint's authority to sell on credit and to accept "trade-ins" stemmed as much from the contract as from the position in which he was placed by Snyder to sell the Willys vehicles. Actual authority is defined by Civil Code section 2316 to be "such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess." By virtue of the terms of his agency contract, and the position in the trade in which he was placed by Snyder,

Flint had ample reason to assume and believe that he possessed the authority to accept Correa's truck on the purchase of a jeep, and to dispose of the truck as he did. In this respect he acted with actual authority.

"Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." (Civ. Code, § 2317.) ▪ In *Safeway Stores* v. *King Lbr. Co.*, 45 Cal.App.2d 17, 23 [113 P.2d 483], it is said that, "Where a principal makes it possible, through his acts, for his agent to inflict injury, the result of such injury should not be passed on to innocent persons who have dealt with the agent in good faith under his apparent authority. The law forbids the principal to deny authority in the agent where his own conduct has invited those dealing with him to assume that the agent possessed such authority. In such a case, a principal is bound by his acts and is estopped by his own conduct from denying the authority of the agent to act." ▪ And as this court said in *Gaine* v. *Austin*, 58 Cal.App.2d 250, 260 [136 P.2d 584], "Agency may be implied from the facts of a particular case, and if a principal by his acts has led others to believe that he has conferred authority upon an agent, he cannot be heard to assert, as against third persons who have relied thereon in good faith, that he did not intend to confer such power."

▪ Correa testified that he and Flint went to the Placer County Bank before he bought the truck. This visit was followed by his execution of the sales contract which was immediately purchased by the bank. This purchase of the sales contract by the Placer County Bank is a strong circumstance tending to negative any inference that Flint was not authorized to follow the usage of the trade and to accept his truck as a "trade-in" on the purchase price of a new jeep. It was Snyder who armed Flint with apparent authority to take the truck in on the purchase of the jeep. ▪ Correa's loss, therefore, should fall upon Snyder, for as is said in *Carter* v. *Rowley*, 59 Cal.App. 486, 489 [211 P. 267] : "As between two innocent persons, one of whom must suffer, the loss should fall on the principal who has armed the agent with apparent authority and thus enabled him to obtain the advantage of the person with whom he trades, rather than on the purchaser, where the agent acts within the apparent scope of his authority and there is nothing in the transaction to put the purchaser on notice that the agent is exceeding his

authority.'' *Siegel* v. *Bayless,* 113 Cal.App.2d 661 [248 P.2d 968], and *Freitas* v. *Marsh,* 70 Cal.App.2d 711 [161 P.2d 565], support this rule.

■ The evidence must be considered by the reviewing court in the light which is most favorable to the respondent when the insufficiency of the evidence to support a finding is urged as the ground for reversal (*Cavero* v. *Franklin etc. Benev. Soc.,* 36 Cal.2d 301 [223 P.2d 471]), and all legitimate and reasonable inferences are to be indulged in to uphold the findings if possible. (*Richter* v. *Walker,* 36 Cal.2d 634, 640 [226 P.2d 593].) ■ If two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. (*Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427, 429 [45 P.2d 183].) ■ It has also been held that the reviewing court is bound to accept the determination of the trial court if it cannot be said that as a matter of law the evidence is insufficient to support a finding either way. (*Vaughn* v. *Jonas,* 31 Cal.2d 586, 593 [191 P.2d 432].) In our opinion the evidence here amply sustains the findings. Our conclusion in this respect disposes of the other points mentioned in appellant's briefs, and renders further notice of them unnecessary.

The appeal from the order denying a new trial is dismissed, and the judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.