[Civ. No. 9373. Third Dist. June 26, 1958.]

JOHN M. WOOLEY, Respondent, v. A. J. SCHILDER,
Appellant.

Preston, Falk & Johnson and Harry W. Falk, Jr., for Appellant.

T. G. Fitzgerald for Respondent.

WARNE, J. pro tem.*—This is an appeal from a money judgment rendered in favor of plaintiff. The case was tried by the court sitting without a jury.

In May of 1952, the plaintiff, as buyer, and the defendant, doing business as Mendocino Motor Sales, as seller, entered into an installment sales contract for the purchase of a 1950 Ford F-8 tractor, upon which there was an unpaid balance of $1,590 payable in monthly installments. Defendant assigned this contract to the Bank of America National Trust and Savings Association. Plaintiff was also the owner of a 1945 Reliance log trailer which he used in conjunction with the tractor.

In June of 1952, the plaintiff was having marital difficulties, and in an attempt to secure funds to comply with the court order for the support of his wife he left the tractor and trailer with the defendant with instructions to sell the same, deduct a commission for making the sale, satisfy an account which respondent was then owing appellant, and then to deliver the balance of the proceeds from the sale to the plaintiff.

Plaintiff failed to pay the June and July installments on the contract to the Bank of America, and in due course the bank made demand upon him for payment. Plaintiff mentioned the matter to the defendant and asked him if he, plaintiff, should make the payments, to which defendant replied, "no, it would take care of itself." It appears that the bank exercised its right of repossession on September 27, 1952, and transferred the tractor to the defendant in exchange for $1,577.50.

In March of 1953, defendant sold the tractor for the sum of

*Assigned by Chairman of Judicial Council.

$2,500, and as part payment accepted a Reo truck as a "trade-in" at an agreed value of $976. Thereafter, defendant sold the Reo and the plaintiff's Reliance trailer for the sum of $1,695. In this deal a Diamond T truck was traded in on the purchase price at an agreed value of $376. The Diamond T truck was later disposed of and a Ford panel truck accepted as part payment at a value of $100. The Ford panel truck was "presumably" sold for $100. Repairs were made on the Ford tractor, the Reliance trailer, and the Reo truck by the defendant while the vehicles were in his possession, without the consent of the plaintiff. After the final "washout sale" defendant claimed there was nothing coming to plaintiff, but that as a result of defendant's selling plaintiff's truck and trailer, making repairs and suffering a loss on one of the trade-ins plaintiff owed defendant the sum of $265.76.

The trial court specifically found that the plaintiff entered into an oral agreement with the defendant wherein it was agreed by the defendant that he would sell, in consideration of a reasonable commission to be paid to him, the said tractor and trailer, and that he would deliver the proceeds of the sale to the order of the plaintiff; that pursuant to said agreement plaintiff delivered the Ford tractor and Reliance trailer to defendant; that defendant sold the truck and trailer for the sum of $2,900; that a reasonable commission to be allowed to defendant on account of the off-set sale and pursuant to a stipulation of the parties is the sum of $290; that there is due and owing to the defendant, on an open book account, the sum of $96.73, and further that the defendant is entitled to credit against plaintiff in the sum of $1,577.50, being the amount paid by him for redemption of the Ford tractor; that despite repeated demands made upon him, the defendant failed and refused to make any payments whatsoever on account of such sale, and that insofar as the allegations and denials set forth in defendant's answer to plaintiff's complaint conflict with the foregoing they were untrue.

The trial court concluded that plaintiff was entitled to judgment against the defendant for the sum of $935.77, with interest thereon from the second day of June, 1953, at the rate of 7 per cent per annum, and his costs and disbursements. Judgment was entered accordingly and this appeal followed. Defendant first contends that the trial court, in its findings, erroneously adopted plaintiff's version of the facts. There is no merit in this contention. It was the province of the trial court to adopt any theory supported by the evidence, and as

there is substantial evidence to support the findings this court is bound by said findings. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183].)

Defendant next contends that the trial court erred in disallowing any credit for the repairs made to the Ford tractor and the Reliance trailer, and losses made on the trade-ins and for repairs made to the Reo trade-in.

As to the repairs and losses, defendant asserts that the trial court disregarded a summary of defendant's records relating to the costs of repairs on the vehicles and the losses incurred arising out of the sale of plaintiff's tractor and trailer. Even so, the trial court had a right to reject this evidence. It is the exclusive province of the trier of the facts to judge and weigh the facts. (*Thompson* v. *City of Long Beach*, 41 Cal.2d 235, 246 [259 P.2d 649].) In commenting upon the summary in its "Order for Findings" the trial court said:

"Even though instructions to repair had been given, the Court would be loathe for two reasons to fix any definite amount as the costs of repairs because of the unsatisfactory evidence present in support thereof. First, the evidence received was not the best evidence. Instead of the books of accounts showing the charges, a purported summary (Defendant's Exhibit 'B') was presented from which the inference arises that the books would have been adverse. . . . Secondly, a grave doubt of the integrity of the summary springs from the item 'charges on commissions on Diamond T, Ford Panel and *repossession fees of attorneys*, $150.00.' [Emphasis added.] The defendant did not repossess and nothing was paid by him to the bank for such a service. In some circles this is euphemistically referred to as 'padding'."

Defendant contends next that the trial court erred in disallowing any credit for trade-ins. It is his claim that taking a "trade-in" is customary in the automobile business, and that such custom and usage of the trade is an element of the contract. "It is the general rule that when there is a known usage of the trade, persons carrying on that trade are deemed to have contracted in reference to the usage unless the contrary appears; *that the usage forms a part of the contract.*" (*Correa* v. *Quality Motor Co.*, 118 Cal.App.2d 246 [257 P.2d 738].) However, the rule is not operative against one who is not a member of the trade or profession "unless he in fact knows it or has such reason to know it that the member reasonably believes that he knows it. This is true even though the transaction is one that regularly occurs with-

in the trade or profession.'' (3 Corbin on Contracts, p. 139, § 557.) In the instant case plaintiff was a trucker, not a member of the automobile business, and there is no evidence that he knew of the usage or custom of taking in "trade-ins" when a nonmember of the automobile business, as seller, delivers a motor vehicle to a dealer as his agent, with instructions to sell the vehicle for him. We find no merit in defendant's contention.

It seems clear to us that the defendant clearly exceeded his authority and that the trial court's judgment is sustained both on the facts and the law.

The judgment is affirmed.

Peek, Acting P. J., and Schottky, J., concurred.