[Civ. No. 6037.   Fourth Dist.   Mar. 10, 1960.]

ARVIN-KERN COMPANY (a Partnership), Respondent, v. B. J. SERVICE, INC. (a Corporation), Appellant.

784

Callaway, Kirtland & Packard, Hulen C. Callaway and Abe Mutchnik for Appellant.

Young, Wooldridge & Paulden and William F. Peters for Respondent.

COUGHLIN, J.—This is an action to recover damages resulting from the use of a defective piece of equipment furnished to the plaintiff partnership by the defendant corporation.

Plaintiff was engaged in causing oil and gas wells to be drilled upon land in the county of Kern; had employed drill-

ing contractors to do the actual drilling; and, through its consultant engineer, contracted with the defendant to cement a "liner" in place. In the course of this cement work, a tool furnished by the defendant and lowered into the oil well by the drilling crew came apart and plugged up the hole. As a result, additional drilling work was done which cost the plaintiff $68,564.11. The trial court rendered judgment in favor of the plaintiff and against the defendant in this amount. From this judgment the defendant appeals.

The defendant's contentions on appeal may be resolved by a determination of the questions whether there is substantial evidence to support the findings, and whether the findings, because of an alleged inconsistency, fail to support the conclusions of law and judgment.

■ At the outset "it must be borne in mind that, in examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion." (*Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140, 142 [134 P. 1157]; *Thomas* v. *Hunt Mfg. Corp.*, 42 Cal.2d 734, 736 [269 P.2d 12].) ■ "It is also to be noted that while full findings are required upon all material issues a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made." (*Richter* v. *Walker,* 36 Cal.2d 634 [226 P.2d 593].)

Plaintiff's consultant engineer awarded the cementing job to the defendant upon condition that the latter would furnish a cementing tool essential to the application of the cement. The tool in question is known as a "swab assembly." It is attached to a piece of drilling equipment; placed inside of a "liner"; and lowered into the hole. The "liner" is perforated, permitting the cement to flow through onto the outside, holding and sealing the "liner" in place. This operation is accomplished by delivering cement under pressure through a pipe to a designated place in the "liner" beyond the "swab assembly" which prevents the cement from backing up into the casing and forces it outside of the "liner." The "swab assembly" consists of a "mandril," or pipe, portions of which are threaded, with "down swab rubbers" assembled thereon and held in place tightly by the use of "stop" and "lock"

rings, together with a "collar," or coupling, screwed on to the end of the "mandril" to which the drilling equipment is to be attached. This tool, as described, was assembled by a representative of the defendant and delivered to the well site. Subsequently it was attached to a piece of drilling equipment known as a "stinger" which was a 20-foot length of 2-inch pipe. This connection was effected by screwing a "swedge," or a "cross-over nipple," onto the connecting "collar," or coupling, on the "swab assembly." The "swedge" was used as a reducer; the "collar" on the "swab assembly" being larger than the 2-inch pipe. In turn the "swedge" and the "stinger" were attached by another coupling. Both the "swedge" and the coupling attaching it to the "stinger" were obtained from another representative of the defendant at the well site when the drilling equipment was being attached to the "swab assembly."

In due course, the foregoing equipment was lowered into the hole and the cementing operations commenced. The cement was forced under pressure down through the pipe in question. Upon completion of this operation, and after the cement had set, the equipment was raised. However, all of the "swab assembly" with the exception of the "collar" remained in the well; the "mandril" had become detached from the "collar."

An inspection of the "collar" revealed the presence of white lead indicating either, that it had not been screwed on tightly to the "mandril" or that the threads on the "collar" and the threads on the "mandril" were mismated. Where the threads on the inside of a "collar," or coupling, match the threads on the outside of the nipple end of a "mandril," or pipe, and they are screwed together tightly the white lead "squashes out," so that when they are unscrewed the lead is not present. If they are not screwed tightly, the lead remains. The lead also remains in those instances where the threads are mismated, although a "friction bind" occurs giving the impression of a firm contact.

A representative of the defendant who assembled and delivered the cementing tool testified that he merely hand set the "collar," i.e., did not set it tightly, although all of the other connections were tightened by the use of a vise and wrench. On the other hand, when the drilling crew attached the "swedge" to the "swab assembly," the "collar" was held by a "back-up wrench" while the "swedge" was screwed onto it, and no one observed that the "collar" was not screwed tightly onto the "mandril."

When the ''swab assembly'.' was delivered to the well site by the man who had assembled it, he told one of the drillers that he had checked it in his vise; that it was tight; and was ready to run. Later, the consultant engineer asked another representative of the defendant, the cementer in charge of the cementing crew, if the cementing tool was made up all right and if all of the threads fit. This was an extra precaution, as a double check. The cementer replied: ''Yes, she is OK, I put it in the vise and put a forty-six or forty-eight . . ., and jumped on it and she held.''

The first cause of action in plaintiff's complaint sounds in contract. In conformance therewith the trial court found that defendant had agreed to cement a ''liner'' in place in plaintiff's oil well; to furnish the cementing tool, i.e., the ''swab assembly,'' necessary to do the job; that defendant assembled and furnished such a tool; that the tool so furnished was used for the purpose intended; that the ''mandril'' of the cementing tool was insecurely affixed to one of the connections which was a part of the tool, came apart from that connection and remained in the well; and that as a result the plaintiff expended $68,564.11 in clearing the ''mandril'' from the well.

██ Under the custom of the oil drilling trade, an agreement to furnish a special tool implies the further agreement that the tool so furnished shall be delivered in a serviceable and useable condition; that the drilling crew will not tamper with or dismantle such a tool; and that the obligation of determining whether the parts of such tool are securely affixed to each other is upon the supplier. ██ The existence of this custom is established by substantial evidence and, although there is evidence in the record which would support a contrary conclusion, under the general rule it is our obligation to accept that evidence which supports the judgment. As a consequence, implied in the findings of the trial court is the agreement upon the part of the defendant to deliver the cementing tool in serviceable and useable condition, with all of the parts thereof securely affixed to the ''mandril.''

██ ''It is the general rule that when there is a known usage of the trade, persons carrying on that trade are deemed to have contracted in reference to the usage unless the contrary appears; that the usage forms a part of the contract . . .'' (*Hind* v. *Oriental Products Co., Inc.,* 195 Cal. 655, 667 [235 P. 438].)

This rule frequently has been applied. (*California Lettuce Growers, Inc.* v. *Union Sugar Co.,* 45 Cal.2d 474, 482 [289 P.

2d 785, 49 A.L.R.2d 496]; *Isenberg* v. *California Emp. Stab. Com.*, 30 Cal.2d 34, 37 [180 P.2d 11]; *Buckner* v. *A. Leon & Co.*, 204 Cal. 225, 227 [267 P. 693]; *Store of Happiness* v. *Carmona & Allen, Inc.*, 152 Cal.App.2d 266, 271 [312 P.2d 1104]; *Correa* v. *Quality Motors Co.*, 118 Cal.App.2d 246, 251 [257 P.2d 738]; *Guipre* v. *Kurt Hitke & Co.*, 109 Cal.App.2d 7, 14 [240 P.2d 312]; *Watson Land Co.* v. *Rio Grande Oil Co.*, 61 Cal.App.2d 269, 272 [142 P.2d 950].)

■ Moreover, under the general rule applied to bailments, a depositor is liable to the depositary "for all damages caused to him by the defects or vices of the thing deposited." (Civ. Code, § 1833; *Fisher* v. *Pennington*, 116 Cal.App. 248, 250 [2 P.2d 518].)

■ The defendant contends that there is no evidence supporting a conclusion that it was obligated to do anything more than to furnish a "mandril"; that the "collar" on the nipple end of the "mandril" was not a part of the tool it agreed to furnish; and that it was not required to attach the "collar" tightly to the "mandril." The foregoing evidentiary supported findings foreclose this contention. For purposes of its own choosing, defendant describes the obligation imposed upon it by the agreement in question in terms of service, i.e., its duty to assemble the cementing tool and tightly attach the parts thereof together, whereas its obligation was to furnish a tool in a useable and serviceable condition. The plaintiff did not request the defendant to assemble a cementing tool; it requested the defendant to furnish such a tool. Consequently, it was not necessary to prove that defendant was required to tighten together the parts of the "swab assembly" which it delivered to plaintiff. By its agreement, including the terms implied by the custom of the trade, the defendant promised to deliver a "swab assembly" that could be used without any further tightening of its parts.

■ The defendant also contends that the evidence does not establish that the damage which plaintiff suffered was caused by its breach of contract. This contention is based on the claim that the evidence does not show why the "collar" and the "mandril" came apart, and on the further claim that the damage would not have occurred if the drilling crew had checked the connections between the parts of the "swab assembly" before use. As heretofore noted, the evidence supports an inference that the disconnection in question resulted from the fact that the "collar" was not securely affixed to the

"mandril" at the time the cementing tool was delivered to plaintiff, and that this insecurity was due either to a loose connection between the "collar" and the "mandril" or the mismating of the threads in the "collar" and the "mandril." The cases cited by the defendant, where there was no evidence as to the cause of a defective condition, clearly are not applicable to the case at bar.

The measure of damages for the breach of an obligation arising from contract "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." (Civ. Code, § 3300.)

In substance, the defendant contends that the failure of the plaintiff to inspect the "swab assembly" preliminary to use was an intervening act which rendered the defendant's breach of contract a remote and not a proximate cause of the damage incurred. The record presents two conclusive replies to this contention. The first is that there was no obligation on the plaintiff to make any inspection as suggested. There is substantial evidence to support such a conclusion. The second is that, even accepting the defendant's premise respecting the obligation of the plaintiff to investigate preliminary to use, the issue of proximate cause presents a question of fact which has been determined by the finding of the trial court. (*Better Food Mkts.* v. *American Dist. Tel. Co.*, 40 Cal.2d 179, 188 [253 P.2d 10, 42 A.L.R.2d 580]; *Tremeroli* v. *Austin Trailer Equip. Co.*, 102 Cal.App.2d 464, 475 [227 P.2d 923]; *Oregon etc. Freight* v. *Fruehauf Trailer Co.*, 83 Cal.App.2d 620, 624 [189 P.2d 329].)

We conclude that the evidence supports the findings and the judgment. This requires a consideration of defendant's second major contention, i.e., that the findings, because of an alleged inconsistency therein, do not support the conclusions of law and the judgment. The plaintiff alleged two causes of action in its complaint. The first sounded in contract and the second sounded in tort, i.e., negligence. In the latter cause of action, it was alleged that the defendant "negligently and carelessly affixed a mandril to the said cementing tool furnished by" them and that the "mandril" was lost in the hole by reason of this negligence. With respect to this second cause of action, the written findings declare that the defendant agreed to cement a "liner" in place and to furnish a cementing tool for that purpose; that the cementing tool came apart; and that plaintiff or defendant "was

not guilty of negligence in connection therewith.'' No finding was made with respect to the act of negligence charged in the second cause of action; no finding declaring untrue the allegations therein that the defendant ''negligently and carelessly affixed a mandril to the said cementing tool.'' However, the defendant contends that the statement in the findings that defendant was not guilty of negligence is a finding of fact inconsistent with the findings of the court in response to the allegations in the first cause of action by which the court found that the defendant furnished a cementing tool for the purpose of cementing a ''liner'' in place; ''that the mandril of the cementing tool was insecurely affixed to one of the connections which was a part of the tool''; came apart from the tool; and remained in the hole. It is argued that the finding that the ''mandril'' ''was insecurely affixed to one of the connections'' is based on an implied finding of negligent conduct on the part of defendant in assembling the tool and, consequently, the statement in the findings respecting the second cause of action that ''defendant was not guilty of negligence in connection therewith'' creates an inconsistency and conflict which renders the findings applicable to the first cause of action uncertain and ineffective. The fallacy of this argument is manifold.

Negligence was no part of the first cause of action. (*Tremeroli* v. *Austin Trailer Equip. Co.*, 102 Cal.App.2d 464, 475 [227 P.2d 923].) It sought recovery for damages caused by a breach of defendant's agreement to furnish a cementing tool in a serviceable and useable condition. The negligent conduct of the defendant, acting through its employees, in assembling the tool was not the basis of this cause of action. If the tool had been assembled by an independent contractor; delivered to the defendant; and, in turn, without negligence on its part, delivered by defendant to the plaintiff, the defendant would have been liable under the facts of this case upon proof of the defective condition of the tool at the time of delivery to plaintiff. The plaintiff's reliance upon evidence establishing that the defendant's employees failed to securely attach the ''collar'' to the ''mandril'' was to prove the defective condition of the tool at the time of such delivery. This proof was offered in anticipation of a contention, actually made by the defendant, that the cementing tool might have come apart in the well even though it had been securely assembled. As proof of the negligent conduct of the defendant

was not basic to recovery on the first cause of action, no allegation of such conduct was essential to the statement of such a cause of action, and any finding that such conduct did not exist is immaterial to the cause. Under these circumstances, the questioned finding in respect to the second cause of action should be disregarded. (*Martinez* v. *Martinez,* 41 Cal.2d 704, 706 [263 P.2d 617].)

Moreover, even accepting defendant's argument that its liability under the first cause of action must be based on some wrongful act or omission in assembling the cementing tool, and that the questioned finding vindicates it of any charge of negligence, nevertheless the conclusions of law and judgment are supported by other findings. Freedom from liability for wrongful conduct is not established by proof of freedom from negligence. The questioned finding does not vindicate the implied charge of wilful or wanton misconduct. Defendant's employee who assembled the tool testified that he only ''hand set'' the ''collar.'' This and other evidence, in the light of a known custom of the trade, was sufficient to support a conclusion that the acts and omissions of the defendant in assembling the tool were wilful and wanton. It is our duty to interpret the findings in support of the judgment. (*Richter* v. *Walker,* 36 Cal.2d 634, 639 [226 P.2d 593]; *Daniels* v. *Daniels,* 143 Cal.App.2d 430, 439 [300 P.2d 335].) To this end, we conclude that the alleged finding of a lack of negligent conduct created no conflict with the implied finding of wanton or wilful misconduct. (*Lynch* v. *Birdwell,* 44 Cal.2d 839, 847 [285 P.2d 919]; *Mercer-Fraser Co.* v. *Industrial Acc. Com.,* 40 Cal.2d 102, 116 [251 P.2d 955]; *Tognazzini* v. *Freeman,* 18 Cal.App. 468 [123 P. 540].)

For the purpose of this decision, we have assumed that the finding respecting negligence was a finding upon an ultimate fact. In actions to recover for damage resulting from a wrongful act, where the basic charge is negligence, the wrongful character of that act may be pleaded in general terms by alleging that the act was negligently done. It is not necessary to set forth the facts which characterize the negligent character of the act causing the damage. (*Rannard* v. *Lockheed Aircraft Corp.,* 26 Cal.2d 149, 155 [157 P.2d 1].)

However, it is requisite that the act causing the damage be set forth. A general statement of the applicable rule is that, in such cases ordinarily ''it is sufficient to allege the negligence in general terms, specifying, however, the particular act alleged to have been negligently done.'' (*Stephen-*

*son* v. *Southern Pac. Co.*, 102 Cal. 143, 148 [34 P. 618, 36 P. 407].) To charge only that a person was guilty of negligence alleges no causative act. In the case at bar, the court clearly found that the defendant furnished the plaintiff with a cementing tool in which the "collar" was not securely attached to the "mandril." The further finding that the "defendant was not guilty of negligence in connection" with the transaction involved in furnishing the tool, refers to no act or omission, and must be regarded as surplusage. This is in conformity with the written opinion of the trial court, where it was stated: "The judgment is on account of breach of contract." No mention was made therein of the cause of action based on negligence or respecting any allegation of negligence. ▆▆▆ Such an opinion may be considered for the purpose of discovering the process by which the trial judge arrived at his conclusion. (*Union Sugar Co.* v. *Hollister Estate Co.*, 3 Cal.2d 740, 750 [47 P.2d 273]) and as an aid in interpreting the findings. (*Moore* v. *Ojai Improvement Co.*, 152 Cal.App.2d 124, 128 [313 P.2d 47].) We conclude that the findings did not contain an inconsistency which would justify a reversal of the judgment. (*Rose* v. *Hunter,* 155 Cal.App.2d 319, 324 [317 P.2d 1027].)

The judgment is affirmed.

Griffin, P. J., and Shepard, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 4, 1960.