[Civ. No. 7467. Fourth Dist. Dec. 16, 1965.]

WARREN W. PATTERSON et al., Plaintiffs and Respondents, v. WILLIAM MISSLER, Defendant and Appellant.

760

762

James B. Abbey and Sydney H. Buttz for Defendant and Appellant.

Walkoe, Dierdorff & Pyle and A. E. Walkoe for Plaintiffs and Respondents.

COUGHLIN, J.—Plaintiffs, as creditors of Wright Refrigeration, Inc., hereinafter referred to as Wright, brought this action against the latter to recover on claims totalling $14,423.79, and against both Wright and defendant Missler to set aside a conveyance of real property by Wright to Missler allegedly fraudulent under the Uniform Fraudulent Conveyance Act. (Civ. Code, §§ 3439.01-3439.12.) The fraudulent conveyance cause of action, as stated in the original complaint, was premised upon the allegation that the conveyance was made by Wright while insolvent without a "fair consideration." After trial, permission was granted to amend the complaint by adding an additional allegation that at the time of the conveyance Wright was engaged in a business for which the property remaining in its "hands" after the conveyance was an unreasonably small capital. Plaintiffs prevailed. Missler appealed.

The fraudulent conveyance cause of action, as alleged in the complaint and the amendment thereto, was predicated upon two code sections, *viz.*, (1) Civil Code section 3439.04, which provides: "Every conveyance made . . . by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made . . . without a fair consideration." and (2) Civil Code section 3439.05, which provides: "Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors . . . without regard to his actual intent."

The trial court found in plaintiffs' favor on the issues of insolvency of Wright, lack of a fair consideration for the conveyance, and the effect of the conveyance as reducing Wright's remaining property to an unreasonably small capital.

The primary contentions on appeal are:

(1) Insufficiency of the evidence to support the foregoing findings;

(2) Reversible error in sustaining objections to evidence allegedly supporting defendant's position that the consideration for the conveyance was fair;

(3) Reversible error in denying defendant's motion for a new trial upon the ground of newly discovered evidence in proof of his contention that an assumption by him of the obligations secured by a first deed of trust upon the property was part of the consideration for the conveyance; and

(4) The judgment did not protect the rights of defendant as required by the act.

In addition to the foregoing, defendant, in his briefs, asserts incidental contentions not included within his topical indices which are of minor significance. (See Cal. Rules of Court, rule 15.)

### SUFFICIENCY OF EVIDENCE REGARDING INSOLVENCY AND EFFECT OF CONVEYANCE AS REDUCING REMAINING PROPERTY IN "HANDS" OF WRIGHT

It is proper to note at this juncture that the fraudulent conveyance cause of action is not based upon an actual intent to defraud. The two Civil Code sections upon which plaintiffs rely expressly provide that under the circumstances therein stated the conveyance is fraudulent as to creditors without regard to the actual intent of the debtor-grantor. The trial court expressly found the subject conveyance was not made with intent to defraud creditors.

Proof of a conveyance without a fair consideration is essential to the cause of action defined in each of the aforesaid code sections, *viz.*, Civil Code sections 3439.04 and 3439.05. In addition, under the former section there must be proof of insolvency or prospective insolvency of the debtor-grantor, and under the latter section there must be proof that the person making the conveyance was engaged in a business for which the property remaining in his hands after the conveyance was an unreasonably small capital. The trial court found both insolvency and reduction in capital. If either finding is supported by the evidence, granted the existence of other essential elements, the judgment must be affirmed even though the other finding is not so supported. (*Brewer* v. *Simpson*, 53 Cal.2d 567, 584 [2 Cal.Rptr. 609, 349 P.2d 289].) Defendant's contentions respecting the insufficiency of the evidence to support these findings will be considered accordingly.

Insolvency is defined by the act as follows: "A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his proba-

ble liability on his existing debts as they become absolute and matured.'' (Civ. Code, § 3439.02.)

 There is substantial evidence from which it reasonably may be inferred that the fair salable value of Wright's assets on the date of conveyance was less than the amount required to pay its probable liability on existing debts as they became absolute and matured. We need not demonstrate the falsity of defendant's contentions to the contrary by detailing the evidence supporting these inferences. (*Estate of Arstein*, 56 Cal.2d 239, 240-241 [14 Cal.Rptr. 809, 364 P.2d 33]; *White* v. *Kanrich*, 201 Cal.App.2d 356, 358 [20 Cal. Rptr. 37]; *Pores* v. *Purity Milk Co.*, 135 Cal.App.2d 305, 309 [287 P.2d 169].) In addition, the finding of insolvency also is supported by the testimony of the president of Wright that its assets were not sufficient to pay its debts when they became due. Defendant contends that this testimony was an admission by a codefendant not binding upon him, citing a decision holding that the admission of one codefendant in the latter's pleadings is not evidence against another codefendant. The subject testimony, even though an admission against the interest of Wright, was direct testimony as against the defendant Missler concerning the status of the relationship between Wright's assets and liabilities. There is no merit to the claim that the finding of insolvency is not supported by the evidence.

Under these circumstances, and the rule heretofore noted, we need not consider the claimed insufficiency of the evidence to support the finding that Wright's remaining property, after conveyance, was an unreasonably small capital, nor the claimed error in permitting an amendment to the complaint for the purpose of alleging facts to which the latter finding was directed.

SUFFICIENCY OF EVIDENCE AS TO FAIR CONSIDERATION

 The subject conveyance occurred on April 5, 1962. On that date the property conveyed was subject to two deeds of trust; the first securing an obligation with an unpaid balance in the sum of $67,337.31; and the second securing an obligation with an unpaid balance of $29,008.97. Proceedings to effect foreclosure of the second deed of trust had been commenced; notice of default had been given; and the prescribed 90-day period within which to cure the default was about to expire. In consideration for the conveyance the defendant paid in cash the sum of $11,057, which was used to

reinstate the second deed of trust. This amount included advances made by the second deed of trust holder in payment of first deed of trust delinquencies. The property conveyed had a market value of $175,000. The difference between its market value and the obligations secured by the deeds of trust was $78,653.72. Thus, defendant paid $11,057 in cash for a $78,653.72 equity in the property. Defendant contends the cash payment was not the only consideration for the property which should have been considered in determining whether, under the act, there was a fair consideration for the conveyance; that an additional consideration was an assumption by him of the unpaid balance due on the obligation secured by the first deed of trust; and that a further consideration was the agreement by him to lease a part of the conveyed premises to Wright, where the latter had been conducting its business, for a period of five years at $900 per month, which allegedly was approximately one-half of the previous cost to Wright of maintaining the leased premises.

Pertinent to the instant case are those provisions of Civil Code section 3439.03 that: ''Fair consideration is given for property, . . . (a) When in exchange for such property . . . as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, . . . .''

■ What constitutes a fair consideration under this definition must be determined from the standpoint of the creditor. (*Hansen* v. *Cramer*, 39 Cal.2d 321, 324 [245 P.2d 1059, 30 A.L.R.2d 1204].)

■ We need not pass upon the contentions, pro and con, whether the assumption of the first trust deed obligation was a factor to be considered in determining the fair consideration issue, because the trial court concluded that even though the assumption agreement be considered a part of the consideration for the conveyance nevertheless the consideration was not fair. The trial judge expressed his opinion accordingly at the conclusion of the trial. The finding on the issue is that the conveyance ''was made without a fair consideration to WRIGHT REFRIGERATION, INC.'' The opinion of the trial judge may be considered in interpreting this finding and in determining the theory pursued by him in arriving at his conclusion. (*Union Sugar Co.* v. *Hollister Estate Co.*, 3 Cal.2d 740, 751 [47 P.2d 273]; *Winegar* v. *Gray*, 204 Cal.App.2d 303, 312 [22 Cal.Rptr. 301]; *Arvin-Kern Co.* v. *B. J. Service, Inc.*, 178 Cal.App.2d 783, 793 [3

Cal.Rptr. 238].) Under these circumstances, the finding that the conveyance ''was made without a fair consideration'' constitutes a determination that defendant's $11,057 investment and his assumption of the trust deed obligation did not constitute a fair consideration. The contention that the assumption agreement was not considered is not supported by the record. The issue was one of fact. From the evidence before it the trial court was entitled to conclude that the assumption of a $67,000 obligation secured by a deed of trust upon property worth $175,000 was of no practical benefit to Wright or its creditors; and the agreement to assume, in effect, constituted only a colorable consideration. (*Puccetti* v. *Girola,* 20 Cal.2d 574, 578 [128 P.2d 13] ; *Puccetti* v. *Girola,* 63 Cal.App.2d 240, 251-252 [146 P.2d 714].) In *Mix* v. *Yoakum,* 138 Cal.App. 290, 294 [31 P.2d 1071], it was said: ''There is authority for the proposition that where the property conveyed is of value in excess of the mortgage, an agreement on the part of the grantee to pay the same is not a valuable consideration as against the grantor's creditors.'' (See also *Burrows* v. *Jorgensen,* 158 Cal.App.2d 644, 647 [323 P.2d 150] ; *Puccetti* v. *Girola,* 63 Cal.App.2d 240, 251-252 [146 P.2d 714].)

As noted, defendant also contends that an agreement by him to permit Wright to use a portion of the conveyed premises for a period of five years at a rental of $900 per month constituted a further consideration for the benefit of creditors which the trial court failed to take into account in determining the fair consideration issue. On this issue he offered testimony respecting an oral understanding between him and Wright tending to establish the existence of the rental agreement between them. The court sustained objections to questions seeking to elicit this testimony upon the ground it was inadmissible under the parol evidence rule. Suffice to say, this was error. (See 18 Cal.Jur.2d 749, 754-756.) Nevertheless, the court permitted admission of a written memorandum evidencing the rental agreement and, as indicated in its oral opinion at the close of the trial, considered the agreement between defendant and Wright respecting future use of the property, but concluded that such an agreement did not constitute a consideration from the standpoint of the creditors. Defendant urges if Wright were permitted to remain on the property at a rental of $900 per month, which approximated one-half of the cost of maintenance previously expended, then it would be able to continue

its business which would be beneficial to the creditors, and for this reason such an agreement would be a factor in determining whether the consideration for the conveyance was fair. The weakness in this argument is that defendant has not directed our attention to any evidence in proof of his claim that $900 per month was less than Wright theretofore had been paying for its use of the property. Plaintiffs deny the existence of this fact or any evidence in proof of it. Neither is there any showing that the reasonable rental value of the property exceeded $900. Furthermore, whether any probable benefit would accrue to Wright or its creditors from the alleged leasing agreement was a question of fact, and the trial court was not required to accept the inferences defendant advances in support of his conclusion. The trial judge, in his oral opinion expressed at the close of trial, indicated that under the circumstances of this case the alleged leasing agreement was not a factor, from the standpoint of creditors, which would have added to the consideration for the conveyance. This determination is supported by the evidence and is implied in the finding that the conveyance ''was made without a fair consideration.''

Whether defendant's cash investment of $11,057 and his assumption of the first trust deed obligation constituted a fair consideration, in light of the $175,000 market value of the property, under the circumstances in this case, was a question of fact for determination by the trial court and its conclusion in the premises may not be disturbed on appeal.[1]

Defendant contends that $175,000 should not be accepted as the value of the property at the time of conveyance for comparison purposes in determining whether the consideration was fair because the pending second deed of trust foreclosure proceeding required an immediate sale. This contention is without merit. The forced sale characteristics

---

[1]In *Berndt* v. *Berndt*, 192 Misc. 57 [79 N.Y.S.2d 143, 146], payment of $1000 for property valued at $7000 was held not a fair consideration. In *Osawa* v. *Onishi*, 33 Wn.2d 546 [206 P.2d 498], the payment of $11,800 for property valued at $17,000 was held not a fair consideration. In *Busick* v. *Mandeville*, 80 Cal.App.2d 853, 856 [183 P.2d 362], the payment of $6,346.73 for property valued at $10,250 was held not a fair consideration. In *Bailey* v. *Leeper*, 142 Cal.App.2d 460, 463-464 [298 P.2d 684], a conveyance of property valued at $42,610 for the assumption of obligations in the sum of $30,151.35 was held to be without a fair consideration. In the case at bench the value of the property, in excess of the trust deed obligations, was $78,653.72, while the money invested by defendant was $11,057. Thus, the money invested was only a small percentage of the value of the equity in the property conveyed.

incident to the transaction did not require the court to conclude as a matter of law that the property conveyed was not worth $175,000, or the consideration given therefor was fair.

### ALLEGED REVERSIBLE ERRORS

Although the trial court erred in sustaining objections to the introduction of testimony tending to show that defendant and Wright agreed the latter might remain in the property for five years at $900 per month rental, in view of the fact there was other evidence showing the existence of this agreement, and the further fact the court concluded the agreement did not add to the consideration for the conveyance, the alleged error did not constitute a miscarriage of justice. (Generally, see *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

Defendant asserts error in the denial of his motion for a new trial on the ground of newly discovered evidence, which was supported by a showing that since entry of the judgment he located an agreement in writing corroborating other evidence introduced at the trial in support of his contention that a part of the consideration for the conveyance to him was his assumption of the trust deed obligation. Two factors, supported by the record, constitute sufficient ground for the denial, *viz.,* (1) that defendant did not show due diligence in attempting to locate the newly discovered evidence prior to trial. (See Code Civ. Proc., § 657, subd. 4; *Singh* v. *Frye,* 177 Cal.App.2d 590, 594 [2 Cal.Rptr. 372]), and (2) it is not probable a different result would have occurred if the newly discovered evidence had been presented at the trial. (*Dankert* v. *Lamb Finance Co.,* 146 Cal.App.2d 499, 502 [304 P.2d 199].) As the court at time of trial assumed the existence of the assumption agreement, the introduction of a writing establishing such would not have changed the result.

### MISCELLANEOUS CONTENTIONS

Defendant claims the evidence does not establish plaintiffs were creditors of Wright. However, this fact was conceded at the trial by counsel then representing him.

He also contends the Uniform Fraudulent Conveyance Act is unconstitutional insofar as it declares fraudulent a conveyance without a fair consideration where no actual fraudulent intent was present. The fraudulent conveyance

provisions of the Civil Code which preceded the present provisions were constitutionally approved as a valid exercise of the police power. (*Wright* v. *Salzberger*, 121 Cal.App. 639, 642 [9 P.2d 865].) The fact that the present act declares fraudulent a conveyance without a *fair* consideration, whereas the former provisions of the code declared fraudulent a conveyance without a *valuable* consideration, is not a change adversely affecting the constitutionality of the present act.

Wright was made a codefendant in the action with Missler. The complaint contained 26 causes of action. Twenty-five of these were directed solely against Wright to recover on obligations by Wright in favor of plaintiffs. The additional cause of action was directed against both Wright and Missler and alleged the fraudulent conveyance which is the subject of this appeal. Defendant urges error in the fact that a money judgment was entered against Wright, following the latter's default, and a separate judgment was entered against defendant as to the fraudulent conveyance, contending only one judgment may be entered in an action. However, in an action against several defendants the court, by statutory authority, may enter several judgments where such a procedure is proper. (Code Civ. Proc., § 579.) In the case at bench only defendant Wright was liable on the obligations reduced to a money judgment against it, and entry of a separate judgment on those obligations was proper.

### FAILURE OF JUDGMENT TO PROTECT DEFENDANT AS A BONA FIDE PURCHASER

A judgment in favor of a creditor, in a fraudulent conveyance action such as the one at bench, sets aside the conveyance insofar as it affects the creditor, but does not set it aside as to the grantor; as between the creditor and the grantee the conveyance is ineffective; but as between the grantor and the grantee the conveyance remains in full effect. (*McGee* v. *Allen*, 7 Cal.2d 468, 476 [60 P.2d 1026].) The right of the creditor is to have the interest of his debtor in the property at the time of conveyance subjected to his claim. (*Ackerman* v. *Merle*, 137 Cal. 169, 171 [69 P. 983].) Where the conveyance is fraudulent because made by an insolvent debtor to a purchaser who, without actual fraudulent intent, has given less than a fair consideration therefor, the latter is innocent of wrongdoing and, for this apparent reason, the law protects him against loss of his investment. (Civ. Code, § 3439.09, subd. (b).) To accomplish such the

statute, in effect, confers upon the purchaser a lien upon the property to secure repayment of his investment.

To effect these concepts the court, in such a case, is governed by applicable statutory provisions and, in the absence thereof, by "the rules of law and equity including the law merchant and in particular the rules relating to . . . the effect of fraud . . . or other invalidating cause. . . ." (Civ. Code, § 3439.11.) In the case at bench the court found defendant had invested the sum of $11,057 in the property as of date of purchase, i.e., April 5, 1962; had expended $25,388.50 in maintenance of the property between April 5, 1962 and June 7, 1963, i.e., the date of hearing on the accounting issues; had received $25,942 income during the latter period; and as of June 7, 1963, taking into consideration the $553.50 excess of income over expenses, had a net investment in the property of $10,503.50. The judgment ordered the property sold under a writ of execution upon the previously entered $15,344.89 judgment in favor of plaintiffs against Wright on condition that (1) all bidders at the sale be required to pay the sum of $10,503.50 in cash, which would be paid to defendant; (2) this sum should not be credited upon the money judgment in favor of plaintiffs against Wright; and (3) the sale would not be conducted if, prior thereto, defendant paid plaintiffs $15,344.89 in satisfaction of their judgment against Wright.

The procedure outlined by the judgment, in the main, represents a valid exercise of judicial discretion in the selection of an appropriate alternate method authorized by applicable, equitable principles to effect the intention of the statute. The method adopted, in substance, subjects the property to satisfaction of a primary lien imposed thereon to secure repayment to defendant of his investment in the sum of $10,503.50 and of plaintiffs' claim as creditors of Wright. In certain particulars, however, the procedure outlined is incomplete. In addition, the court erred in determining the amount payable to plaintiffs, and the amount of defendant's lien. Plaintiffs are entitled to interest on their money judgment against Wright from date of entry. (*Stockton Theatres, Inc.* v. *Palermo*, 55 Cal.2d 439, 442 [11 Cal.Rptr. 580, 360 P.2d 76].) The amount of defendant's lien should include his original investment in the purchase price, i.e., $11,057, together with interest thereon at 7 per cent per annum from date of investment, i.e., April 5, 1962 (cf. *Potter* v. *Contra Costa Realty Co.*, 220 Cal. 31, 34 [29 P.2d 189]), to date of judg-

ment (*Sullivan* v. *Wellborn*, 32 Cal.2d 214, 219 [195 P.2d 787]), plus the amount expended by defendant in the preservation and maintenance of the subject property, less the reasonable rental value of that property, between April 5, 1962, the date of conveyance, and June 7, 1963, the date of hearing the accounting issues. In the event the rental value exceeds the expense of preservation and maintenance, the excess should be deducted from defendant's original investment and interest. (*Puccetti* v. *Girola*, *supra*, 63 Cal.App.2d 240, 250-251; cf. *Williams* v. *Marshall*, 37 Cal.2d 445, 452 [235 P.2d 372]; *Kent* v. *Clark*, 20 Cal.2d 779, 785 [128 P.2d 868, 142 A.L.R. 576]; *Campbell* v. *Northrop*, 212 Cal. 45, 48 [297 P. 541].) In determining the amount of defendant's lien the court failed to credit him with interest on his original investment. This was error. The defendant claims the court also erred in refusing to give him credit for a management fee and expenses incurred for legal services in connection with renting the property. The court found that the "income" received by defendant from the property exceeded the amount he had expended in the "maintenance" thereof by $553.50 and deducted that amount from his original investment to arrive at the amount of his lien. The record shows that plaintiffs claimed defendant should be charged with the reasonable rental value of the property during the subject period but agreed that in lieu thereof the defendant be charged with the rentals received and receivable from the property during that period; that all parties and the court proceeded on this basis; and, thus, the finding of the court in the premises, under these circumstances, is equivalent to a finding upon the reasonable rental value of the property for the time in question. ▮▮ Defendant was entitled to be reimbursed only for expenditures which preserved the property or added to its value. (Cf. *Campbell* v. *Northrop*, *supra*, 212 Cal. 45, 48; *Conlan* v. *Sullivan*, 110 Cal. 624, 627 [42 P. 1081].) Obviously, any management or legal services performed in connection with the rental of the property did not preserve it nor add to its value and may not be made the basis of a reimbursable disbursement. The conclusion of the trial court charging defendant's original investment with $553.50 on account of his occupancy is supported by the evidence and is proper.

▮▮ The judgment failed to provide for the payment to defendant Missler of the balance, if any, of the proceeds of sale after payment to plaintiffs of the amount of their money judgment against Wright. This was error.

The provision requiring bidders at the execution sale to pay the amount of Missler's lien is an attempt to protect his lien interest in the property. ▉ Preferably, the judgment should provide that in the event the highest bid at the execution sale does not exceed the designated amount of Missler's lien, the sheriff should refuse to accept such and make a return to the court accordingly, which then should enter judgment declaring Missler to be the owner of the property free of the claim of plaintiffs under their money judgment against defendant Wright. As an alternate to the method presently outlined, the judgment might provide that upon sale under the writ of execution for an amount in excess of defendant Missler's lien the proceeds from the sale should be deposited with the court for distribution, which it could effect by order specifically directing payment of the proceeds to Missler on his lien, to plaintiffs on their money judgment from Wright, upon costs of suit, and to Missler as owner of the property sold.

▉ Plaintiffs have represented to this court that defendant Missler has remained in possession of the property pending this appeal and suggest that there should be an additional accounting to ascertain whether further charges should be made against him for his use and occupancy of the property. It is assumed plaintiffs contemplate such an accounting would result in a reduction of the amount of Missler's lien. However, they are entitled only to have their judgment against Wright satisfied and, as a practical matter, if the property is worth what they contend, and what the court found it to be, the proceeds from a sale thereof should far exceed the total of the amount of Missler's lien and the amount of their judgment. Defendant Missler, by remaining in possession after judgment, voluntarily assumed the responsibility of maintaining and preserving the property during that time, and in the event the expenditures therefor exceeded its rental value, he should bear the loss thus occasioned. (*Benson* v. *Bunting*, 141 Cal. 462, 465 [75 P. 59].) No reason exists for a further accounting.

There is no need for a new trial of any of the issues in the case to conform the findings and judgment to the views expressed in this opinion. They may be modified to correct the errors noted herein and the judgment also may be modified in such other particulars as the court in the exercise of its discretion, may deem proper to effect the purpose of the Uniform Fraudulent Conveyance Act.

The judgment is reversed with instructions to modify the findings and judgment by increasing the amount of the lien to defendant Missler, which in the judgment under review is adjudged to be $10,503.50, by adding thereto an amount equal to interest on $11,057, i.e., his purchase price investment, at 7 percent per annum from April 5, 1962, to July 16, 1963, i.e., the date of entry of said judgment, and also to modify the judgment as to the procedure prescribed thereby respecting the execution sale of said property, disposition of the proceeds from that sale, and other pertinent particulars in harmony with the views expressed in this opinion.

Brown (Gerald), P. J., and Whelan, J., Concurred.

A petition for a rehearing was denied January 3, 1966, and appellant's petition for a hearing by the Supreme Court was denied February 9, 1966.