LARRY D. DELPIT AND DOROTHY D. DELPIT, TRANSFEREES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Delpit v. Commissioner
Docket No. 6388-87
United States Tax Court
T.C. Memo 1992-297; 1992 Tax Ct. Memo LEXIS 313; 63 T.C.M. (CCH) 3053; May 19, 1992, Filed *313 Decision will be entered in accordance with respondent's computation under Rule 155. Jerry W. Carlton and John F. Daum, for petitioners. John Kent and Marlene Kristovich, for respondent. PARR
PARR
SUPPLEMENTAL MEMORANDUM OPINION PARR, Judge: These proceedings are under Rule 155. [1] The opinion of this Court, in which we found petitioners liable as transferees under section 6901, was filed on April 2, 1991, as T.C. Memo. 1991-147. Petitioners have objected to respondent's computation under Rule 155, and have proffered their own computation. We find petitioners' arguments without merit and uphold respondent's Rule 155 computation. I. Assets Petitioners Received From Kern, Inc.
In our original opinion we found that KORC, the conduit through which Kern, Inc.'s assets passed into the hands of petitioners, *314 transferred $ 30,403,511 of assets in addition to the litigation rights to three pieces of litigation: (1) United States Department of Energy, (2) Armstrong Petroleum, and (3) Tenneco Oil Company, to petitioners. Petitioners received $ 41 million from the Tenneco litigation, $ 470,341 from the Armstrong litigation, and nothing from the Department of Energy litigation, which remained outstanding at the time of trial. [2]
Petitioners want to exclude the three litigations from the value of the assets they received from Kern, Inc. Petitioners completely misunderstand the holding of our original opinion. The litigation payments in both the Tenneco and Armstrong litigations are assets of Kern, Inc., received by petitioners. Specifically, petitioners received $ 30,276,808 in Kern, Inc.'s assets in the form of note payments from KORC, the entity which Kern, Inc., liquidated into. The $ 30,276,808 is the sum of all KORC's *315 note payments to petitioners less the $ 126,543 we found KORC earned in 1982. The record lacks any evidence that KORC earned any other moneys after 1982. Petitioners also received $ 41,470,341 of Kern, Inc.'s assets in the form of the litigation proceeds. Therefore, in total petitioners received $ 71,747,149 of Kern, Inc.'s assets in a transaction the substance of which was a liquidating distribution from Kern, Inc. and its subsidiaries through a conduit entity, KORC, to the sole shareholder petitioner Larry Delpit. II. Credits for Amounts Petitioners Transferred to KORC
Petitioners cite California Civil Code sec. 3439.09(b) (West 1970); Aggregates Associated, Inc. v. Packwood, 375 P.2d 425 (Cal. 1962); and Patterson v. Missler, 48 Cal. Rptr. 215 (Ct. App. 1965), for the proposition that under California law, it is clear that respondent's recovery is limited to the amount by which the property KORC transferred to petitioners exceeds the consideration given by petitioners, the Kern, Inc. stock, plus interest on that consideration at the statutory prejudgment rate. Petitioners' argument is without merit, and it is clear that none *316 of the three sources of California law petitioners cite applies to their transactions. California Civil Code sec. 3439.09(b) (West 1970) provides: (b) A purchaser or encumbrancer who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment. [Emphasis added.]
Petitioner [3] was the sole shareholder and director of Kern, Inc. Petitioners are neither purchasers nor encumbrancers. To the contrary, petitioners are the recipients of Kern, Inc.'s assets through a liquidating distribution of Kern, Inc., and its subsidiaries achieved by means of a transaction in which (1) petitioner sold all of his stock in Kern, Inc. to KORC for inadequate consideration, (2) Kern, Inc. liquidated into KORC one day after the stock sale, and (3) KORC paid petitioner for the stock with Kern, Inc.'s assets. Next, petitioners cite Aggregates Associated, Inc. v. Packwood, 375 P.2d 425 (Cal. 1962). *317 First, we point out that this case was overruled by Liodas v. Sahadi, 562 P.2d 316 (Cal. 1977). Second, in any event, the case is not applicable. In Aggregates Associated, the Supreme Court of California applied a general rule that entitles a grantee to a credit for sums expended in paying the debts of a grantor when a transfer is only constructively fraudulent, as opposed to being actually fraudulent. The court found the grantee in Aggregates Associated was entitled to a credit for his payments to the grantor's creditors. Petitioners are not grantees, and Aggregates Associated in no way stands for the position that petitioners are entitled to a credit for the Kern, Inc. stock they transferred to KORC. Finally, petitioners rely on Patterson v. Missler, 48 Cal. Rptr. 215 (Ct. App. 1965). As with petitioners' other two sources of California law, Patterson is inapplicable to the case at hand. In Patterson, the District Court of Appeals for the Fourth District of California stated and applied California Civil Code sec. 3439.09(b), which we have found to be inapplicable, as follows: Where the conveyance is fraudulent *318 because made by an insolvent debtor to a purchaser who, without actual fraudulent intent, has given less than a fair consideration therefor, the latter is innocent of wrongdoing and, for this apparent reason, the law protects him against loss of his investment. (Civ. Code sec. 3439.09(b).) To accomplish such the statute, in effect, confers upon the purchaser a lien upon the property to secure repayment of his investment. [Patterson v. Missler, supra at 222; emphasis added.]
Petitioners want (1) a credit for the amount of their "investment" which they argue is their Kern, Inc. stock, and (2) a credit for interest on the value of their Kern, Inc. stock. As previously discussed, petitioners are not purchasers, and accordingly, neither the Patterson case nor California Civil Code sec. 3439.09(b) is applicable to their transactions. Petitioners' argument is without merit and they are not entitled to a credit for either the value of the Kern, Inc. stock or interest on the Kern, Inc. stock. III. Credit for Taxes Petitioners Paid on the Transfers Received From KORC
Petitioners argue that the Government has already received a substantial *319 portion of the tax owing through petitioners' payment of tax on amounts they received from KORC. Accordingly, petitioners argue that if the Government is allowed to keep the sums already paid by petitioners on the amounts received from KORC, and also recover the entire amount of transferee liability from petitioners, then the Government will receive a windfall of extra taxes. Petitioners argue this windfall is prohibited by California law. In Maynard Hospital, Inc. v. Commissioner, 54 T.C. 1675 (1970), we were faced with the same problem of the payment of taxes on amounts later determined to be subject to transferee liability. At 54 T.C. 1676, we stated: As we held in Estate of Samuel Stein, 37 T.C. 945, 956 (1962), where a taxpayer has in 1 year received an amount from a corporation under a claim of right and paid a tax upon the receipt, he is not entitled to recover the tax paid in the prior year under a doctrine of equitable recoupment when it is later determined that he is liable as transferee for tax of the corporation making the distribution to him. In the Stein case we pointed out that prior to the enactment *320 of section 1341, I.R.C. 1954, a number of cases had held that a taxpayer who was required to restore payments which he had received under a claim of right was entitled to a deduction in the year in which repayment was made. We further pointed out that section 1341 now provides the appropriate remedy in a situation where a taxpayer had included an item in gross income in one taxable year and in a subsequent taxable year becomes entitled to a deduction because the item or a portion thereof was no longer subject to his unrestricted use.
Accordingly, we hold for respondent on this issue. IV. The Government's Entitlement to Interest
When transferred assets exceed the total tax liability of a transferor, interest is charged on the deficiency and is a right created by the Internal Revenue Code. However, in the case where a transferee receives assets that are insufficient to satisfy the total tax liability of a transferor, the determination of the existence, starting date, and rate of interest upon the retention of those assets prior to demand is controlled by State law. Estate of Stein v. Commissioner, 37 T.C. 945, 961 (1962). Petitioners argue the *321 latter rule of interest is applicable because the property transferred is less than the deficiency. For the reasons set forth in this supplemental opinion, it is apparent that the former rule of interest applies because the assets transferred to petitioners, $ 71,747,149, clearly exceed the transferor's income tax liability. Decision will be entered in accordance with respondent's computation under Rule 155. Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the years in issue, unless otherwise indicated.↩
2. At the time of trial, the Department of Energy was seeking approximately $ 60 million from KORC.↩
3. References to petitioner in the singular refer to Larry D. Delpit.↩