[L. A. No. 24692. In Bank. Nov. 3, 1958.]

THE FLYING TIGER LINE, INC. (a Corporation), Respondent, v. UNITED STATES AIRCOACH (a Corporation) et al., Defendants; FRITZ HUTCHESON, Appellant.

John W. Preston, John W. Preston, Jr., and Lawrence L. Light for Appellant.

Hill, Farrer & Burrill and William S. Scully for Respondent.

McCOMB, J.—Defendant Fritz Hutcheson, hereinafter referred to as "Hutcheson," appeals from a judgment in favor of plaintiff in an action to recover $72,946.48 due from defendants for the rental and servicing of airplanes.

Defendant United States Aircoach, hereinafter referred to as "Aircoach," is a chartered airline wholly owned, managed and controlled by Hutcheson. On October 15, 1953, it was indebted to plaintiff in the sum of $52,000 for plane rental and other credits. On that date a contract was entered into with Hutcheson, by which plaintiff agreed to extend further credit to Aircoach and Hutcheson agreed to pledge all the stock of Aircoach as security for its debts, past and future.

The agreement read, in part, as follows: "In the event default in payments shall be made by U. S. Aircoach for a period of thirty days after notice in writing the F.T.L. may take title to all or any part of said shares of stock at a value to be agreed upon at said time by the said Fritz Hutcheson and F.T.L., and such value shall be applied against the then existing indebtedness. *It is specifically agreed that the said Fritz Hutcheson is not personally responsible for any indebtedness existing between U. S. Aircoach and F.T.L., other than as created by this instrument.*" (Italics added.)

Thereafter the stock was placed in escrow, and plaintiff extended further credit to Aircoach until the debt reached $72,946.48. On June 3, 1954, plaintiff brought suit against Aircoach and Hutcheson to recover this amount.

The trial court found, supported by substantial evidence, that the corporation Aircoach was the *alter ego* of Hutcheson;

that Hutcheson had misappropriated the funds of Aircoach, thereby causing it to become insolvent; and that plaintiff was without knowledge, and was not chargeable with knowledge, of these acts prior to the institution of the action.*

*Findings XXIII and XXIV of the trial court are as follows:

"XXIII

"Continuously at all times since about May 1952, defendant, FRITZ HUTCHESON, has been and he now is the sole owner of all of the issued and outstanding capital stock, to wit: 15,000 shares of defendant, U. S. AIRCOACH, a corporation, and during all of said time said defendant, FRITZ HUTCHESON, has been and he now is the President and a director of said corporation. Said corporation ceased flying activities and all active business activities on about December 5, 1953. From about May 1952 continuously thereafter, all of the other directors of said corporate defendant were employees or former employees of said corporate defendant, and were chosen by and responsible to said defendant, FRITZ HUTCHESON. Defendant, FRITZ HUTCHESON, at all times mentioned in these Findings, and continuously at all times since about May 1952, solely and exclusively managed, directed, dominated, controlled, and operated the corporate defendant and formed all of its policies. FRITZ HUTCHESON intentionally used and operated the said corporation and its assets and its business affairs and activities as his own, for his personal and individual purposes and gain, and in entire disregard of the corporate form and the corporate entity of U. S. AIRCOACH, a corporation. Plaintiff, or anyone on its behalf, did not know or learn any of the foregoing facts (except the fact that said HUTCHESON was sole shareholder), until after about December 5, 1953, at about which time defendant, FRITZ HUTCHESON, authorized and permitted plaintiff to audit, review and examine the books, records and accounts of U. S. AIRCOACH, a corporation.

"As the direct and proximate result of all of the foregoing facts stated above in this numbered finding, which are hereby found to be true, defendant, FRITZ HUTCHESON, caused defendant, U. S. AIRCOACH, to become incapable of paying its debt to the plaintiff. The largest number and most substantial character of said acts and activities of said FRITZ HUTCHESON mentioned in this finding occurred from and after about December 5, 1953, and at and during the time when the plaintiff was a large creditor of U. S. AIRCOACH, a corporation. The Court further finds that (unknown to plaintiff, or to anyone representing plaintiff, until subsequent to December 5, 1953) defendant, FRITZ HUTCHESON: Used monies belonging to the said corporation for the purpose of paying about $4,000.00 on account of the purchase price of about 4,000 shares of said corporation acquired by said defendant, FRITZ HUTCHESON, personally, and did not repay any part thereof to the corporation; caused the said corporation to pay monies, without consideration, to a certain business owned and operated exclusively by him under the fictitious firm name and style of METROPOLITAN TRAVEL SERVICE; caused the said corporation to pay monies, without consideration, to certain partnerships, to wit: U. S. AIRCOACH AGENCY, and EASTERN PACIFIC AIRLINES, in which his wife was a partner; as a partner with one BLACKWELL, doing business under the fictitious firm name and style of U. S. AIRCOACH SPECIAL, he personally profited to the detriment of defendant, U. S. AIRCOACH, a corporation, although it operated ostensibly as a separate business and was accounted for and treated in the books and records of U. S. AIRCOACH, a corporation, as a division of said corporation, and although the last named corporation

202

Judgment was entered against Aircoach and Hutcheson in the sum of $72,946.48.

Hutcheson alone appeals, presenting these contentions:

█ First: *That the provision in the agreement of October 15, 1953, set forth above in italics released him from personal liability for any indebtedness due, or to become due, from Aircoach to plaintiff.*

This contention is devoid of merit. Hutcheson argues that

included it in and as part of the said corporation's Federal Income Tax Return for the year 1952; caused the corporate defendant to keep and maintain in its books of account, a certain 'Exchange Account' which was used as a means and method for cashing checks drawn to the order of the corporation, and making the proceeds of said checks available in cash to the said HUTCHESON; caused certain funds belonging to the said corporate defendant to be placed in a certain bank cashier's check, the avails of which bank cashier's check were later received by said FRITZ HUTCHESON personally, without consideration moving to the said corporation; caused the sum of $13,112.15 to be withdrawn from funds belonging to the corporate defendant and to be advanced to the U. S. Treasury upon a bid for a surplus airplane, and when said advance was later refunded, he caused the said sum of $13,112.15 to be distributed to himself personally and to two other individuals, without any consideration to said corporate defendant; caused numerous fictitious and erroneous entries to be made in the books, records and accounts of U. S. AIRCOACH, a corporation; caused the sum of $53,836.92 to be set up on the books of U. S. AIRCOACH, a corporation, as a sum due and payable to said HUTCHESON personally, whereas, in truth and in fact, that sum or any part thereof was not owing to or due to said HUTCHESON from said corporation.

"The Court finds that after December 5, 1953, and at a time when U. S. AIRCOACH, a corporation, had ceased flying and business activities, and when it was being threatened with legal action by its creditors, the said HUTCHESON caused the said corporation's bank accounts to be closed and the funds represented thereby and deposited therein to be placed in a bank safety deposit box, and thereafter to be placed in a metal strong box, all for the purpose of avoiding and preventing attachments by creditors and the collection of creditors' bills including the bills of the plaintiff.

"The Court further finds that at said time last above found, the said corporation, with the knowledge of the said HUTCHESON, was unable to pay all of its creditors in full, including the plaintiff's claim. The Court further finds that in 1954, and with knowledge of the existence of large claims, including that of the plaintiff, then existing against the said corporation, and with knowledge of the corporation's inability to pay all of its bills, including that of the plaintiff, the said HUTCHESON intentionally took $17,000.00 in cash from the funds of the said corporation which were then contained in the said metal strong box, as purported past due salary. The Court further finds that at no time since about May 1952 when the said defendant HUTCHESON acquired all of the issued and outstanding capital stock of said corporation, was any salary or other compensation entered or accrued upon the books of the said corporation as due or owing to said HUTCHESON.

"The Court further finds that as the direct and proximate result of the use, operation, direction and control of said corporation by said HUTCHESON, and by reason of his personal receipt of large sums from

the agreement released him from any liability other than as created thereby. This contention overlooks the fact that the trial court found that Hutcheson was the *alter ego* of his co-defendant, Aircoach, and that, unknown to plaintiff and after entering into the agreement, Hutcheson misappropriated the funds of Aircoach, thereby causing it to become insolvent.

The trial court further found that this was all done without the knowledge of plaintiff.

The trial court determined that the agreement of October 15, 1953, between plaintiff and Hutcheson personally was for the purpose of giving plaintiff additional security, in the form of Hutcheson's personally owned stock, for the debt then owed by Aircoach to plaintiff. By this agreement Hutcheson secured the promise of plaintiff to continue to advance credit to his corporation.

The above-quoted provision in the instrument, to the effect that Hutcheson was not personally responsible for any indebtedness between his corporation and plaintiff other than as created by the instrument, was inserted obviously as a precautionary measure to make it clear that by posting security for the debt of the corporation Hutcheson was not impliedly giving his general promise to be liable for the debt beyond the security posted.

Any other construction of the language would be tantamount to giving Hutcheson a "license to steal," that is, to do anything he wished with his corporation and its creditor, plaintiff. It would mean that plaintiff was thereby absolving him from liability for conduct which would make the very contract itself and the security mentioned therein wholly valueless. ■ This would be contrary to the established rule

---

the said corporation without consideration, he caused the said corporation to be unable to pay the corporation's just debt to the plaintiff.

"XXIV

"The Court finds that by reason of the facts elsewhere in these Findings found to be true that there has been continuously since about May 1952, and there is now, such a unity of interest and ownership between U. S. AIRCOACH, a corporation, and FRITZ HUTCHESON, that the separateness of U. S. AIRCOACH, a corporation, as distinct from FRITZ HUTCHESON, individually, ceased and does not exist, and that to adhere to the legal fiction of the separate existence of said corporation would, under the facts and circumstances of this case, sanction a fraud and promote injustice, both as to the plaintiff and as to the other creditors of U. S. AIRCOACH, a corporation, and it would be unjust and inequitable to the plaintiff and the said other creditors to adhere to said legal fiction of separate corporate entity and to fail to regard U. S. AIRCOACH, a corporation, and FRITZ HUTCHESON, individually, as one and the same."

that, whether expressed or not, every contract includes a covenant of good faith and fair dealing between the parties.

The trial court's conclusion is supported by section 1542 of the Civil Code, which reads: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

Since the trial court found that Hutcheson's fraudulent acts occurred subsequent to the time the agreement was entered into, it is obvious that plaintiff did not at such time know of the facts upon which its present claim is based.

In *Ellis* v. *Jones*, 121 Cal.App. 325, 328 [2] [8 P.2d 933], the court held that a cause of action for fraud which occurred in connection with the sale of real property was not released by the fact that an express release of all claims had been signed and delivered by the plaintiff at a time when he was unaware of the existence of the fraud. This rule is applicable in the present case.

■ Second: *That plaintiff, after full knowledge of the fraud, demanded performance of the contract of October 15, 1953, thereby waiving Hutcheson's fraud and releasing him from any indebtedness due from Aircoach to plaintiff.*

This proposition is untenable. Hutcheson contends that the stock mentioned in the agreement was delivered to plaintiff and that plaintiff's accepting it constituted a waiver of any fraud. This is contrary to the record and the following finding of the trial court: ". . . said shares are now held under said pledge in favor of the plaintiff, by Security Title Insurance Company of Los Angeles, California, as escrowholder and pledgeholder."

The shares were never transferred to plaintiff. The facts are that, pursuant to the agreement, the shares were pledged to plaintiff and held in escrow by Security Title Insurance Company of Los Angeles and have never been "transferred to plaintiff." All voting rights to the shares were retained by Hutcheson and were not to be affected unless title to the stock was acquired by plaintiff. Title to the stock was never acquired by plaintiff, by foreclosure of the pledge or otherwise; and the entire control of Aircoach remained, and remained at the time of the filing of the suit, in Hutcheson, the sole shareholder.

The purported appeal from the order denying the motion

for a new trial is dismissed.   (See 36 Cal.Jur.2d, (1957), New Trial, § 180, p. 396.)
  The judgment is affirmed.

  Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.