[Civ. No. 23024.   Second Dist., Div. Three.   Dec. 8, 1958.]

PICO CITIZENS BANK (a Corporation), Respondent, v. TAFCO INC. (a Corporation), Appellant.

740

Nicholas Ferrara for Appellant.

Burton & Gauldin and Betts, Ely & Loomis for Respondent.

PATROSSO, J. pro tem.*—This action in replevin was instituted by the plaintiff as assignee of H. O. Moos doing business as Moos Manufacturing Company, to recover possession of a quantity of knife and scissor sharpeners or their value in case possession thereof could not be had. Following the filing of the complaint and prior to trial, plaintiff invoked the auxiliary remedy of claim and delivery and thereby secured possession of a number but not all of said items claimed by it. By the trial court's judgment, plaintiff's right to the sharpeners of which it had obtained possession was confirmed, and in addition plaintiff was awarded judgment in the sum of $2,000 against the defendant for the balance of the sharpeners

---

*Assigned by Chairman of Judicial Council.

to the possession of which plaintiff was adjudged to be entitled but which were not delivered to it. Defendant appeals.

The questions presented by this appeal primarily concern the interpretation to be accorded an agreement executed by and between plaintiff's assignor, Moos, and the defendant. This agreement, dated September 22, 1954, is in the form of a letter addressed by defendant to Moos and accepted by the latter. The pertinent portions thereof read as follows:

"This is to confirm our oral arrangement. Whereby you are to furnish us with Tafco Knife sharpeners and Tafco Scissors Sharpeners complete, ready for packaging on the following basis.

"We are turning over to you all our dies and equipment (to be covered by a receipt) necessary in the manufacturing and assembling of the above named two items, plus the good parts we now have on hand which we will bill you for at our cost.

"You will manufacture the parts you are equipped to manufacture at or under the price we are now paying and what parts you are not able to manufacture, you will purchase.

. . . . . . . . . . . . .

"This letter in addition to confirming the plan will, also, be an authorization for the delivery of the first 25,000 of each item complete. They will be delivered to us ready for packaging on which we will sign a delivery receipt. You will then send us an invoice covering shipments.

"Upon receipt of purchase order we will package and ship and send invoice on day of shipment. Copy of invoice will be sent to you. Upon receipt of payment of our invoice, we will, upon depositing that check—draw a check to you covering the cost of the merchandise as billed by you—plus 5% for engineering and carrying charges. Example: On an order for one gross combination (knife and scissors sharpeners) at $168.48 per gross—less 17 cents per unit for advertising—total $24.48—net amount $144.00, you will be paid upon receipt of check from purchaser, your billing on the two units, (knife and scissors sharpeners) plus 5% on the $144.00, the net after advertising. If merchandise is sold on a different basis—the 5% will be based on that price less any advertising allowances. The only exceptions to this is on samples we use on which we will pay you as per the billing and 5% on this amount.

"Further stock will be arranged for by conferences. This

arrangement is to remain in effect as long as it is satisfactory to both parties. In the event it is cancelled by either party, the above arrangement will remain in effect until you have been paid for the merchandise delivered and the dies and other equipment of ours returned to us. Neither party shall terminate any part of this agreement without giving the party ninety (90) days written notice in advance.

"It is further understood that the merchandise will be stores, [sic] here, 4563 Valley Boulevard, Los Angeles, California. It is your merchandise until it is sold. Furthermore it will be kept so that it will be convenient to inventory, which privilege you or any duly authorized person can have at any time."

Pursuant to this agreement Moos manufactured and delivered to defendant not only the initial quantity of 25,000 of each of the items therein mention but additional quantities thereof. The scissor sharpeners were covered by a patent owned by defendant and the knife sharpeners were the subject of a pending application for patent also owned by the defendant. As manufactured by Moos each had stamped thereon the name "Tafco" and the former bore the legend "Pat. 1950" while the latter bore the legend "Pat. Appl'd for." Upon the delivery of the items to defendant, Moos issued an invoice therefor and set up a charge against the defendant which upon delivery of the goods issued a receipt therefor to Moos. After the goods were received by the defendant it packaged the same by attaching them to cards and in the case of the knife sharpeners inclosing the same in a plastic bag.

The trial court found that on or about May 25, 1955, "a letter of cancellation was sent by Moos to and received by Tafco in which Moos stated that he was thereby terminating said contract, that tooling would be returned to Tafco by Moos, and in which Moos demanded a return of the sharpeners from Tafco's premises." The trial court further found "That on or about June 24, 1955, Moos served on Tafco and Tafco received the notice introduced in evidence as plaintiff's Exhibit Number 2, in which Moos again demanded a return of all sharpeners delivered to Tafco still in the possession of Tafco and in which Moos tendered to Tafco all dies and equipment belonging to Tafco in the possession of Moos under said contract."[1]

---

[1] This was a notice of rescission wherein Moos stated that he rescinded the agreement of September 22, 1954, upon the ground that he was induced to enter into the same by reason of the misrepresentations made by

At the outset it may be noted that, while the appellant claims that the trial court erred in admitting certain evidence as to the mailing of the letter of May 25th referred to in the trial court's finding above quoted and that the trial court's finding with respect thereto is unsupported by the evidence and also that the notice of rescission of June 24th does not constitute a notice of cancellation within the meaning of the agreement, in view of our conclusion with respect to another contention of the appellant presently to be mentioned, we shall assume for the purposes of this appeal that the trial court's findings above referred to are supported by the evidence.

On September 15, 1955, Moos, by an instrument in writing, assigned to the plaintiff all of its right, title and interest in and to the sharpeners in possession of defendant as well as all of its right to the possession thereof and upon defendant's refusal to return the same to the plaintiff the latter on November 8, 1955, instituted the present action.

The trial court further found that in executing the agreement of September 22, 1954, the material portions of which have hereinbefore been set forth, "the parties intended to state, and did in fact agree that title to all sharpeners manufactured by Moos and delivered to Tafco under said contract would remain in Moos until said sharpeners were sold to third persons by Tafco."

Appellant first contends that the foregoing finding is without support in the evidence. We find no merit in this claim. The explicit language of the agreement: "It is your [Moos's] merchandise until it is sold" precludes any other conclusion. The fact that the sharpeners were invoiced by Moos to defendant upon the delivery thereof to the latter and that a charge therefor was set up against defendant in Moos's books of account does not detract from the fact that title, as distinguished from the right of possession thereto, was to remain in Moos until the goods were sold by the defendant in view of the fact that by the terms of the agreement it was expressly provided that the defendant was not to be liable for the payment of such invoices until the sharpeners were sold

Tafco and its agents. Following the service of this notice an action to rescind the agreement was filed by Moos but it was later dismissed. Upon the trial of the instant action no claim was made by the plaintiff that Moos was entitled to rescind the agreement by reason of fraud nor is any such claim made here by the plaintiff.

and defendant received the purchase price therefor from its customers.

While not strictly a contract of consignment under which one delivers possession of goods to another for the purpose of sale with title remaining in the former, the agreement here bears a close resemblance thereto. ■ As pointed out by Professor Mechem (Mechem on Sales, § 43) one of the features which stamps a contract as one of consignment or agency to sell, as it is sometimes referred to, rather than a sale is the fact that the seller has no right to the purchase price before sale or unless sold by the consignee or agent and the latter does not become liable as purchaser by reason of the receipt of the goods. While the line of distinction between the two types of contracts is sometimes shadowy, an examination of the authorities reveals that in the great majority of cases involving the question whether title had passed under a contract whereby one delivered goods to another for the purpose of sale are those wherein the question involved arose between a purchaser from the person to whom the goods were entrusted for sale and the entruster, and in which situation the courts have gone to considerable length in reaching the conclusion that title had passed in order to protect the rights of the innocent purchaser. As between the parties themselves, however, and until the goods have been sold to a third person there is no good reason why courts should hesitate to give effect to a provision in an agreement between the owner of the goods and the one to whom they are delivered for sale to the effect that title should remain in the former until such time as the goods were sold by the latter.

■ Appellant next contends that the following finding of the trial court is erroneous and unsupported by the evidence.

"That by the clause 'In the event it is cancelled by either party, the above arrangement will remain in effect until you have been paid for the merchandise delivered and the dies and other equipment of ours returned to us,' the parties did intend to and did in fact refer to the shipping, billing and payment for merchandise sold by Tafco to third persons, as set forth in the paragraph preceding such clause in the said letter contract and did not intend to, nor did in fact refer to possession or the right to possession of unsold sharpeners stored on Tafco's premises."

While the language of this finding is somewhat obscure when viewed in the light of the conclusions of law and the

judgment it is made clear that thereby the trial court construed the provision of the agreement quoted therein as meaning that in the event the agreement was cancelled by either party Moos would have the right to the possession of the merchandise theretofore delivered by him to the defendant and then remaining unsold in the latter's possession, and that the only part of the agreement which would remain in effect was defendant's obligation to pay Moos any money due and unpaid for merchandise which defendant prior to cancellation had delivered or sold and delivered to its customers. The correctness of the trial court's conclusion in this regard is the crucial question presented upon this appeal.

In our view the key to the proper interpretation of the language of the provision in question lies in the meaning to be ascribed to the words "the merchandise delivered." Implicit in the trial court's finding quoted above is the conclusion that these words do not have reference to the merchandise delivered by Moos to the defendant and remaining in the latter's possession at the date of cancellation but only to such of said goods as defendant had delivered to its customers prior to the effective date of the cancellation. With this view we find ourselves unable to agree.

An examination of the agreement reveals that the only other place where the words "delivered" or "delivery" appear therein is the paragraph heretofore quoted, reading as follows: "This letter in addition to confirming the plan will, also, be an authorization for the *delivery* of the first 25,000 of each item complete. They will be *delivered* to us ready for packaging on which we will sign a delivery receipt. You will then send us an invoice covering shipments." (Italics ours.)

Here it is plain that the word "delivered" refers to the delivery of the sharpeners by Moos to the defendant and nothing appears which suggests that the word "delivered" in the sentence defining the rights and duties of the parties in the event of cancellation is used in a different sense. It seems only reasonable to assume that if the parties intended that the words "the merchandise delivered" as used in the cancellation clause should refer only to merchandise sold by the defendant to its customers prior to the date of cancellation, as the trial court found, they would have said so in these words. Moreover, if the language in question means no more than the trial court found that it does it is wholly redundant and serves no purpose inasmuch as defendant's liability for merchandise sold by it is definitely fixed by the preceding

paragraph, and the cancellation of the agreement, absent any provision to the contrary, would not operate to release defendant from liability already accrued thereunder. (*Sanborn* v. *Ballanfonte* (1929), 98 Cal.App. 482, 488 [277 P. 152].)

■ As said in *Hyatt* v. *Allen,* 54 Cal. 353, 358, quoted with approval in *Wagner* v. *Shapona* (1954), 123 Cal.App.2d 451, 461 [267 P.2d 378]:

". . . it is our duty to so construe every provision of a written instrument as to give force and effect, not only to every clause but to every word in it, so that no clause or word may become redundant, unless such construction would be obviously repugnant to the intention of the framers of the instrument, to be collected from its terms, or would lead to some other inconvenience or absurdity."

■ Having concluded that "the merchandise delivered" in the cancellation clause in question refers to merchandise delivered to the defendant and remaining in its possession at the date of cancellation, what then is the meaning to be ascribed to the words "the above arrangement will remain in effect until you [Moos] have been paid for the merchandise delivered"? There can be no doubt that the word "arrangement" as used therein is synonymous with "agreement" for the opening sentence of the letters says: "This is to confirm our oral arrangement." It is obvious that the parties contemplated that in the event of a cancellation of the agreement by either some portion of it would remain in force, and we have but to look at the language of the agreement which appears above the cancellation clause to determine what the parties had in mind. To say, as does respondent, that "The portion of the contract which appears 'above' this sentence and to which it refers relates solely to the billing and payment procedures to be followed upon sales being made by Tafco to the ultimate purchaser" is only partly true for much more is comprehended thereby. Included therein is the provision which authorizes defendant to sell merchandise delivered to it by Moos. While, as respondent contends, the preceding provisions of the agreement do not expressly say that the defendant shall have the right to the possession of the goods for the purpose of sale, this is implicit in the provision that the goods shall be delivered by Moos to defendant and that defendant shall have the right to sell the same, for unless defendant were able to make delivery to its customers the power of sale would be meaningless and in the absence of a sale no payment would ever become due to Moos.

Nor is it of consequence, as respondent contends, that the provision of the agreement to the effect that title to the goods shall remain in Moos and be stored in the defendant's premises follows rather than precedes the cancellation clause. We see nothing inconsistent in the interpretation which we have accorded to the cancellation clause and the provision that refers to title and storage. While it is true that the right to possession usually follows title this is not necessarily so, and that this is not true in the present case is evident from the language of the agreement. Prior to cancellation title to the goods at all times remained in Moos but it may not successfully be maintained that by reason of this the right to possession was not by the terms of the agreement expressly vested in defendant, and such continued to be the case after cancellation.

Neither do we see any merit in respondent's argument that our interpretation of the agreement leads to absurdity. If regard be had to the entire agreement, the situation of the parties, their motives, and the object to be attained thereby (12 Cal.Jur.2d, p. 328) it not only serves to confirm the correctness of our conclusion as to the proper interpretation of its terms but the reasonableness thereof as well. While the agreement does not strictly constitute a joint venture between the parties the relationship created thereby is somewhat akin thereto in that it involves a cooperative effort to manufacture and sell the devices in question. (*Cf. Universal Sales Corp.* v. *California etc. Mfg. Co.* (1942), 20 Cal.2d 751, 764 [128 P.2d 665].) Moos was to provide the capital for the labor and materials required to manufacture the articles and the defendant the capital and services necessary to package the goods and secure the distribution and sale thereof, and neither was to reap any reward therefrom except that resulting from the sale of the articles. It is common knowledge that in order to secure a commercial distribution of a manufactured article the expenditure of a substantial sum for advertising and selling is required. While the trial court excluded proof offered by the defendant of the expenses incurred by it in this connection, the agreement itself indicates that the parties contemplated that approximately 14 per cent of the defendant's selling price of the articles was to be expended for advertising alone. In view of the fact that the parties had agreed that the agreement could be terminated by either they undoubtely contemplated that at the time of the cancellation the defendant might have on hand a quantity of the manufactured

articles remaining unsold and for which orders might reasonably be expected thereafter as the result of the defendant's prior advertising and selling efforts. In the light of this it is not at all unreasonable that the parties should have been desirous of providing that the defendant should have the right and obligation to continue to sell the articles on hand, for such a provision was clearly to the advantage of both. In so far as the evidence discloses, Moos was not engaged in the business of selling or equipped to do so, the articles bore the defendant's name and they had been advertised under that name and orders therefor would normally come to it. It would therefore be unfair to Moos, if the defendant should elect to terminate the contract, to permit defendant, without the consent of Moos, to escape from its obligation to sell the articles remaining in its possession by the simple device of tendering their return to Moos who might be unable or have considerable difficulty in disposing of the same. If such were the case we do not apprehend that Moos would be here contending for the construction of the agreement urged by the respondent. On the other hand it would be equally unfair to the defendant, if Moos should terminate the agreement, to permit him to retake possession of the goods and dump them on the market at a substantially lower price than that at which they were being marketed by the defendant to the latter's future detriment. With these considerations in mind it seems entirely reasonable to conclude that the parties would provide, in language substantially that which they used, that in the event of cancellation by either the merchandise remaining in the defendant's possession should be continued to be sold by it under the terms of the agreement.

What we have said above does not imply, as respondent suggests, that defendant has an unlimited time to sell the articles in its possession. ██ Whether therein expressed or not, every contract includes a covenant of good faith by each party (*Flying Tiger Line, Inc.* v. *United States Aircoach* (1958), 51 Cal.2d 199, 202-203 [331 P.2d 37]), and absent a provision in the agreement fixing the time within which the defendant should continue to have the right of sale the law implies a reasonable time.

While the respondent states in its brief that "testimony concerning facts surrounding the execution of the contract, its performance by the parties, the construction placed upon its terms by them and its termination" support the trial court's interpretation of the agreement, we are not furnished

with any reference thereto. Our own examination of the record discloses that the only extrinsic evidence bearing upon the meaning of the cancellation clause is the testimony of Mr. Crowley, the president of the defendant, to the effect that in a conversation with Mr. Moos prior to the execution of the agreement he stated that in the event of cancellation the contract should remain in full force and effect until the merchandise was sold and Moos was paid in full therefor. This testimony was denied by Mr. Moos and the findings indicate that Mr. Crowley's testimony was not accepted by the trial judge. In this situation the meaning of the provision in question must of necessity be ascertained from the language of the agreement itself.

█ Finally respondent contends that inasmuch as the agreement was prepared by the defendant any ambiguity or uncertainty therein should be interpreted most strongly against it. This is undoubtedly the rule where the language is ambiguous or subject to different interpretations, but "(n)o term of a contract is either uncertain or ambiguous if its meaning can be ascertained by fair inference from the other terms thereof." (*Bondy* v. *Phoenix Indemnity Co.* (1953), 116 Cal.App.2d 702, 704 [254 P.2d 148].) Such we believe is the situation here.

█ Having concluded that under the terms of the agreement the defendant following cancellation had the continuing right for a reasonable time to the possession of the merchandise in its possession for the purpose of selling the same, the trial court erred in entering judgment in favor of the plaintiff.

Defendant also appeals from the order denying its motion to tax costs. In view of the fact that we are reversing the judgment this appeal becomes moot and it is accordingly dismissed.

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied January 6, 1959, and respondent's petition for a hearing by the Supreme Court was denied February 4, 1959.