Alexander REINHARCZ; Reinharcz Chrysler-Plymouth, Inc., Plaintiffs,

v.

CHRYSLER MOTORS CORPORATION, Chrysler Corporation, Does I–X, inclusive, Defendants.

Civ. A. No. 79–0947 MML (SX).

United States District Court, C. D. California.

May 19, 1981.

Donald W. Perkal, Costa Mesa, Cal., for plaintiffs.

Franklin H. Wilson and Anne M. Mitchell of McCutchen, Black, Verleger & Shea, Los Angeles, Cal., for defendants.

### Opinion and Order

MALETZ, Judge:[1]

In this action, plaintiffs seek damages claiming that Chrysler Corporation (Chrysler) breached the implied obligations of good faith and fair dealing of Direct Dealer Agreements the parties entered into in 1965. Jurisdiction is based on diversity.

#### I

The facts are these. The dealer agreements in question authorized plaintiff Reinharcz Chrysler-Plymouth, Inc. (Reinharcz CP) to sell and service new Chrysler, Plymouth and Imperial vehicles from a facility in San Clemente, California.[2] Paragraph 7(c) of each of the agreements provided:

> DIRECT DEALER [Reinharcz CP] agrees to maintain at DIRECT DEALER'S address as indicated in the opening paragraph of this agreement or at such other or additional locations as Chrysler approves in writing, a place or places of business including sales rooms, service, and parts and accessories facilities * * *.

Reinharcz CP leased its San Clemente dealership facility from a third party for a term expiring on December 31, 1971 subject to an option to extend it for an additional four years. However, Reinharcz CP anticipated relocating the dealership from San Clemente to a facility Chrysler intended to build on five acres of land the latter owned in Mission Viejo, California. This Chrysler acreage was part of a larger parcel that was to be developed into an auto plaza which would include dealerships of other automobile manufacturers. Such clusters of competing dealerships, experience indicated, provided more effective marketing representation than isolated dealerships. In view of its planned relocation to this proposed auto plaza, Reinharcz CP renewed its lease for the San Clemente facility for a period of only two years, ending on December 31, 1973.

On August 2, 1972, Mr. Reinharcz signed a letter of intent to relocate Reinharcz CP to the planned Chrysler facility at Mission Viejo with the proviso that "* * * final approval by the Marketing Investment Committee of Chrysler * * * will be required prior to actual relocation of our dealership and construction of new facilities." Following this, Mr. Reinharcz and Chrysler entered into a Dealer Relocation Agreement on August 21, 1972, which read in part:

> 3. The parties hereto recognize that Chrysler * * * has not yet received Investment Committee approval for the acquisition of the land and/or the Facility. In the event the Investment Committee approval is not obtained * * * then this agreement shall be null and void and of no further force and effect and neither party shall have any recourse, claim or cause of action against the other for Chrysler'[s] * * * failure to secure such land and construct the Facilities and/or Lease completed Facilities.

The proposal for the construction of a dealership facility in Mission Viejo was on Chrysler's Investment Committee agenda several times during 1972–1973, but action was deferred because no other automobile manufacturer had committed itself to build-

---

1. Judge of the United States Court of International Trade sitting by designation pursuant to 28 U.S.C. § 293(b).

2. Plaintiff Alexander Reinharcz is the president and sole stockholder of Reinharcz CP.

ing dealership facilities there. In fact, no dealership facility was ever built on the proposed site and it was later developed as a shopping center.

Because of the lack of progress on the Chrysler proposal, Mr. Reinharcz bought land in April 1973 near Mission Viejo and informed the Chrysler regional sales manager, Donald Merritt, that he proposed to build his own facility on the land he was purchasing. (The property purchased by Mr. Reinharcz is hereafter referred to as the Reinharcz property.) By letter dated July 19, 1973, Mr. Reinharcz requested new Direct Dealer Agreements for the dealership facility he proposed to build on the Reinharcz property. Mr. Merritt requested specific plans for the dealership facility and after the plans had been received and reviewed by him and by his superiors in Detroit, he wrote to Mr. Reinharcz on August 27, 1973 setting forth a comparison of various aspects of the proposed facility on the Reinharcz property and Chrysler's standard guidelines for dealership facilities. After setting forth these comparisons, Mr. Merritt's letter stated:

As you can see, the facility you propose falls far short of meeting normal guidelines even for 300 units of annual planning potential. Our projected sales volumes for this area contemplate an initial opportunity of approximately 300 new units with a forecast in excess of 500 new units within three to five years. The most glaring deficiency in your plans is the extremely limited space provided for service. The necessity for providing adequate space with which to service customers has always been of extreme importance and in today's business climate it is crucial. In addition, the lack of space for any future development, particularly further increase in service capacity, makes your plan entirely unacceptable.

\* \* \* \* \* \*

On the basis of the information you have supplied and the analyses outlined above, we cannot honor your request for a letter of intent to grant new sales agreements.

Mr. Reinharcz responded to Mr. Merritt's August 27, 1973 letter, stating:

\* \* \* we agree that the facilities originally proposed by you through Chrysler \* \* \* were larger and designed more for future expansion compared with the facilities now being in process to be built by us. \* \* \*

We realize the fact that we would have very little expansion area left for the future and therefore we would like to come to a mutual term agreement where we would have the option sometime during the third year in business in Mission Viejo of relocating in larger facilities and in the event we would fail to exercise such option you would have the right to revoke our sales agreement or have the right to demand that we relinquish all of our rights to our franchise agreement.

We also realize that we have not done the job as far as sales are concerned at our present address but we are all aware of its unique location being locked in from three of its four directions \* \* \*.

\* \* \* \* \* \*

As you are aware, we are all running out of time and therefore we would appreciate receiving your written intent in a few days.

Mr. Merritt reported to his superiors in Detroit that he was favorably inclined towards Mr. Reinharcz' proposal of a term sales agreement that would allow Reinharcz CP to move to the planned facility on the Reinharcz property for two years and then relocate to the Chrysler property at the Mission Viejo auto plaza. However, Mr. Merritt's superiors continued to view Mr. Reinharcz' proposed facility as inadequate and refused to approve it even on a temporary basis.

On October 12, 1973, Mr. Reinharcz wrote a letter to the president of Chrysler in which he reviewed the history of the Reinharcz CP operations and the various relocation proposals including the proposal for a short term sales agreement for the dealership facility he proposed to construct on the Reinharcz property. The letter stated in part:

On Friday, October 5th, Mr. Merritt stopped in my office and had assured me that the term agreement was in the process of being typed out in Detroit for my premises and after it was completed, it would be taken across the street to the Legal Department for approval and by October 9, the latest, I should receive my letter of intent. Wednesday, October 10, I called Mr. Merritt bringing to his attention that no letter had been received by me, and it was at that time that he told me that he must fly to Detroit on Monday, the 15th, before the Letter of Intent could be issued by him.

My purpose in writing this letter is that I sensed a new hesitation on Wednesday, the 10th, speaking to Mr. Merritt and I feel that I am no further in my accomplishments as far as an agreement is concerned than I was 4 years ago when all this started. I have only 2½ months away before the expiration of my lease, and at this point I am fit to be tied because my construction loan is being held up due to the Letter of Intent, and now you will realize why I had no other alternative but turn to you.

In reply, a vice president of Chrysler wrote to Mr. Reinharcz on October 31, 1973 stating that the items contained in Mr. Reinharcz' letter were being reviewed and concluding:

When we complete our review, Mr. D. R. Merritt, our Los Angeles Regional Manager, will contact you.

Mr. Merritt met with Mr. Reinharcz on November 6, 1973 and again informed him that Chrysler would not approve relocation of Reinharcz CP to the Reinharcz property.

At the end of 1973, Mr. Reinharcz renewed the lease for the San Clemente dealership facility for the year 1974. In early 1974, Mr. Reinharcz told the Chrysler district manager that he was no longer going to be a Chrysler Plymouth dealer and in May 1974 informed Mr. Merritt that "he no longer wanted to be a dealer * * *." On June 25, 1974, Mr. Reinharcz wrote to the landlord of the San Clemente dealership facility stating that he was terminating the dealership facility lease in 60 days pursuant to the termination provisions of that lease. On July 2, 1974, Mr. Reinharcz notified Chrysler that Reinharcz CP was terminating its Chrysler, Plymouth and Imperial Direct Dealer Agreements in 30 days. Chrysler responded that the agreements were terminated effective August 2, 1974.

## II

Against this factual background, plaintiffs claim that Chrysler breached the Direct Dealer Agreements and the related obligation of good faith and fair dealing in the performance of these agreements by leaving plaintiffs "high and dry." More specifically, plaintiffs state that Chrysler was in violation of its agreements both by not going forward with the 1972 Relocation Agreement covering the Chrysler property in the Mission Viejo auto plaza and by refusing to approve relocation to the Reinharcz property near Mission Viejo on which Mr. Reinharcz proposed to build a dealership facility.

Considering first the 1972 Dealer Relocation Agreement, it specifically made Investment Committee approval a condition precedent for going forward with the development of the Chrysler property, a condition that was not fulfilled and which apparently led Mr. Reinharcz to purchase his own property in April 1973. Nowhere have plaintiffs suggested that the Investment Committee acted unreasonably or in bad faith in not approving the development of a Chrysler Plymouth dealership facility on the Chrysler property in the Mission Viejo auto plaza.

As for the Reinharcz property, the August 27, 1973 letter from Mr. Merritt to Mr. Reinharcz set forth in considerable detail the reasons Chrysler found his proposed dealership facility at that location inadequate. At no point in the trial of this case have plaintiffs offered proof or even suggested that the August 27, 1973 letter was not an accurate statement of the deficiencies in the proposed dealership facility on the Reinharcz property or that Chrysler acted unreasonably or in bad faith in refusing

to approve relocation to that proposed facility.

It is generally recognized that a covenant of good faith and fair dealing between the parties to a contract in the accomplishment of the purposes of the contract is implied by law. See, e. g., *Flying Tiger Line, Inc. v. United States*, 51 Cal.2d 199, 203–204, 331 P.2d 37, 40 (1958); *Milton v. Hudson Sales Corp.*, 152 Cal.App.2d 418, 431, 313 P.2d 936, 942 (1957). However, it is equally true that "a covenant of good faith and fair dealing will not be implied to vary the express unambiguous terms of a contract." *Milstein v. Security Pac. Nat. Bank*, 27 Cal.App.3d 482, 487, 103 Cal.Rptr. 16, 19 (1972). In this case, the contractual provision at issue is paragraph 7(c) of the Direct Dealer Agreements requiring Chrysler's "approval in writing" of the dealership location. Based upon the undisputed facts set forth in the August 27, 1973 letter from Mr. Merritt to Mr. Reinharcz, it must be concluded that Chrysler acted reasonably in refusing to give its approval in writing to the relocation of Reinharcz CP to the property Mr. Reinharcz had purchased and proposed to develop. Having failed to offer any evidence that would contradict or cast doubt on the reasons set forth by Chrysler for refusing approval of relocation to the Reinharcz property there is no basis to hold that Chrysler breached either the express language of its Direct Dealer Agreements or any implied covenant of good faith and fair dealing.

For the foregoing reasons, the action is dismissed and judgment will be entered accordingly.[3]

---

**3.** In view of this holding, it is unnecessary to reach Chrysler's additional contentions that (1) plaintiffs' claims are barred by the applicable statute of limitations; (2) that Mr. Reinharcz does not have standing to be a plaintiff; and (3) that plaintiffs' damage evidence is based on an inappropriate standard.