[Civ. No. 29359.   Second Dist., Div. Three.   May 9, 1967.]

BILLINGSLEY J. BIRD, Plaintiff and Appellant, v. TECH-
NICOLOR, INC., et al., Defendants and Respondents.

Volney F. Morin, Robert B. Lisker and Harlean M. Carroll
for Plaintiff and Appellant.

O'Melveny & Myers, William W. Vaughn and Girard E.
Boudreau, Jr., for Defendants and Respondents.

SHINN, J.*—The action is for damages claimed to have
been sustained as a result of the alleged failure to honor an
employee's option to buy 4,000 shares of common stock of
defendant Technicolor, Inc., plaintiff's employer. Several
corporations are named as defendants; they will be referred
to as Technicolor or defendant. At the close of plaintiff's
evidence the court granted a motion of defendant for judg-
ment under section 631.8, Code of Civil Procedure; findings
and conclusions of law were made and filed, judgment was
entered and plaintiff appealed.

*Retired Presiding Justice of the Court of Appeal sitting under assign-
ment by the Chairman of the Judicial Council.

■ The following facts were established: On December 19, 1960, plaintiff was and for several years had been serving as defendant's Director of Public Relations at a salary of $400 per week. On that date, in order to induce plaintiff to remain in the employ of the company for at least 18 months after September 21, 1960, (to March 21, 1962) a new contract which contained the stock option was entered into.

The pertinent provisions of the contract were that plaintiff was given an option until September 20, 1965, to purchase 4,000 shares of Technicolor at $8.79 per share upon conditions stated as follows:

"1. Your employment with one of the Technicolor Companies must continue for a period of at least 18 months from September 21, 1960, unless sooner terminated by death, by disability or with the consent of the Board of Directors of Technicolor, Inc." Another provision read: "In accordance with the provisions of paragraph I above the acceptance of this option by you will constitute an agreement on your part to remain in the employ of Technicolor until March 21, 1962."

Plaintiff accepted the offer in writing, returned a copy to the company, and thereby bound himself to remain in the employ of Technicolor until March 21, 1962. Plaintiff rendered his services as agreed until June 15, 1961, when the company decided to dispense with his services as Director of Public Relations and to offer him employment as a consultant. The terms of the offer were stated in an inter-office communication, reading as follows:

June 16, 1961

"Louis Sallet

"Sydney P. Dorais

"R.L. Kennedy

"BILLINGSLEY J. BIRD—CHANGE OF EMPLOYMENT STATUS

"Effective at the close of business for the week ending June 17, 1961, Mr. Bird is to be taken off payroll as a full time employee of the Company. In connection with this action, lump sum checks are hereby authorized to be prepared to Mr. Bird's order covering:

"a. His accrued vacation through June 17, 1961, which he has advised me is three weeks, and,

"b. his full salary for six weeks with income tax deductions only.

"It is my understanding that in connection with his present full time employment, Mr. Bird has an expense advance from

the Company of $550. He will close this advance out with a final expense report as a full time employee within the next day or so.

". . . . . . . . . . . . . .

"Effective with the start of business the week commencing June 18, 1961, Mr. Bird will be retained as a Consultant to the Company on a non-exclusive basis at the rate of $1,000 per month. As a consultant on certain Motion Picture Division business, Mr. Bird will not be considered an employee of the Company and, accordingly, he will not participate in fringe benefits such as Group Insurance, etc. His consultant's fee is to be paid to him the first of each month and, accordingly, please arrange for him to receive on July 1, a check for $500 followed by checks for $1,000 on the first day of subsequent months. These checks should be mailed to Mr. Bird at:

"B. J. Bird

535 South Curson Avenue, Apt. 12E

Los Angeles 36, California

"I suggest that these new arrangements be handled through the Private Payroll.

"In connection with his new status, Mr. Bird will incur expenses on behalf of the Company. Mr. Bird is to be reimbursed for these expenses which will be handled by expense accounts routed through this office and having my approval for payment.

"RLK-bp

RLK"

A copy of this memorandum was given to plaintiff.

Plaintiff rendered his services as a consultant until they were terminated by the company January 31, 1962. On March 22, 1962, upon the expiration of the 18 months period, plaintiff gave notice of his exercise of the option and tendered a check for $35,160 as the option purchase price; this was about $40,000 less than the market value of the stock at that time. Defendant refused the tender upon the ground that plaintiff's rights under the option had been eliminated by the new contract of employment.

Plaintiff's first contention is stated as follows:

"TRIAL COURT ERRED IN FAILING TO FIND THAT THE DEFENDANTS BREACHED THE STOCK OPTION CONTRACT OF DECEMBER 19, 1960."

The brief states: "This is a bilateral contract whereby the defendants bound themselves not only to keep the stock option open, but also *not* to do anything to prevent plaintiff's

performance, which is implicit in the contract. *Winegar* v. *Gray* (1962), 22 Cal.Rptr. 301, 204 Cal.App.2d 303.'' The contention assumes that plaintiff was discharged from his employment as Director of Public Relations. The undisputed evidence was that plaintiff was not discharged; when he was threatened with discharge he accepted a new contract of employment in a different capacity and upon different terms. The former contract ceased to exist. The court found one of the conditions of the June 15, 1961, offer of employment was that plaintiff would have no right to exercise a stock option, that plaintiff accepted the offer upon that condition and later confirmed to the treasurer of the company that he had given up all rights under the option.

Plaintiff's second point reads:

''THE TRIAL COURT ERRED IN FINDING THAT PLAINTIFF ACCEPTED DEFENDANTS' OFFER OF A CONSULTANCY WITHOUT A STOCK OPTION.''

Pertinent evidence upon this issue was the following: John R. Clark, Jr., was president of the company. Patrick J. Frawley, Jr., and some associates had strong positions in the management of the company and Frawley had become Chairman of the Board and Chief Executive Officer. Mr. Clark testified that shortly before June 13, 1961, Frawley directed that plaintiff be discharged; Clark intervened in plaintiff's behalf and the matter was discussed with the members of the board. An agreement was reached and recorded in a memorandum by Clark, reading:

| ''BJB | 6/13/61 |
| ''6 weeks slary | |

| ''1000.00/month consultant |
| ''Report to Riley |
| ''No stock option |
| ''Present |

PJF<br>
EEE<br>
MJ<br>
JRC''

The initials are those of Frawley, Ettinger, Jacobs and Clark. Clark explained to plaintiff that Frawley had directed that plaintiff be discharged, that he (Clark) had insisted that plaintiff be retained and that the matter had been compro-

mised by his retention as a consultant upon the terms stated in the memorandum. He testified that he told plaintiff of the terms of the proposed agreement and that the stock option would not be included in the new employment. Plaintiff denied that the stock option was mentioned in the first conversation with Clark. The court stated orally that the court believed the testimony of Clark as to his conversation with plaintiff.

Questioning the finding of a waiver of the option rights plaintiff says that although he assumed the new position of consultant he did not accept the terms of the company's offer; that he made a counter offer under which he would not surrender his option rights and that the company accepted his counter offer. He refers to a letter he wrote to Clark June 15, 1961, in which he stated he accepted Clark's offer made on behalf of the company "that I will be paid six weeks full salary in addition to accrued vacation pay and that I will be retained as a consultant on a non-exclusive basis at the rate of $1000 per month from the date of my termination." The letter made no mention of the stock option. On the strength of this letter plaintiff contends that he preserved his option rights. The argument ignores the testimony of Clark that he communicated to plaintiff the fact that the offer was exclusive of option rights and the evidence that plaintiff so understood it.

It is evident that Frawley desired that the company be relieved of the option. It is also evident that Frawley and Clark believed that plaintiff was subject to dismissal under that contract. It appears that plaintiff believed he would be discharged as Director of Public Relations and that he could only remain with the company if he accepted the offer to retain him as a consultant. He testified that in his final conversation with Clark over the terms of the offer he said he supposed that Frawley wanted to take away his stock option, that Clark said "yes he does" and that he (plaintiff) said "It's a dirty rotten deal, and if he does, I will sue him." That was the time when plaintiff should have consulted his attorney for advice as to his rights under the December 19, 1960, contract. We express no opinion as to what those rights were.

The facts were that plaintiff was given a choice between unconditional termination of his employment and acceptance of employment in a different capacity at a lower salary and with no option rights. Under pressure he accepted the latter.

However, no issue was raised by the pleadings or pretrial order, or tried, as to the voluntariness of plaintiff's acceptance of the new contract. The motives of the management of Technicolor in getting rid of plaintiff's option rights are immaterial.

Since no time was specified in the June 15, 1961, agreement as to the duration of the employment, it was terminable at the will of either party. Although plaintiff naively expected to remain with the company for years, it is apparent that the management had other plans.

We are obliged to agree with the trial court that Technicolor succeeded in getting rid of its obligations under the option, at a saving to the company of some $40,000 and at the expense of plaintiff's expected profit. The methods employed by Technicolor were not illegal.

The judgment is affirmed.

Ford, P. J., and Moss, J., concurred.